## A09A1129. HENRY v. BEACHAM.
(686 SE2d 892)

DOYLE, Judge.

This appeal arises from an order of support entered against Travis Deon Henry in DeKalb Superior Court. On appeal, Henry

---

challenges the trial court's creation of a $250,000 trust to fund future child support payments in the event that he fails to pay support as ordered. For the reasons that follow, we affirm.

In 2004, Jameshia L. Beacham filed an action for paternity against Henry, asking for genetic testing of Henry and her child[1] and asking for entry of an order of support against Henry. Henry answered, admitting that he had undergone genetic testing and was the father of Beacham's child, and he admitted he was therefore liable for reasonable support of the child. On August 22, 2005, the trial court entered a temporary child support order, directing Henry to pay $2,200 per month to Beacham. On August 17, 2007, the trial court entered a final judgment of paternity and legitimation, finding that (1) Henry had fathered Beacham's child; (2) Henry had fathered eight other children; (3) seven court orders existed in multiple states dealing with child support for seven of the eight other children; and (4) Henry had recently signed a $25 million contract with the Denver Broncos of the National Football League.

The trial court found that Henry's gross monthly income was $49,583.33, which supported an upward deviation from the top-most tier of the child support obligation tables to $3,000 per month of support. The court also found that, despite having made substantial sums of money as a professional athlete over the preceding seven years, Henry had been behind on his temporary child support payments to Beacham on three occasions and had encountered financial problems over the course of his professional athletic career. The final judgment order directed entry of an income deduction order, providing that $9,000 be deducted from Henry's monthly paychecks during the football season (September through December) in order to fulfill a total annual child support amount of $36,000. Finally, in light of Henry's previous financial problems and previous child support arrearages, the trial court directed that he fund a $250,000 trust, which would be invaded only in the event that Henry failed to pay his obligations.

With regard to the trust, the trial court directed Henry to pay $100,000 to the fund on October 15, 2007, $100,000 on November 1, 2007, and $50,000 on March 15, 2008, each payment thus coinciding with three large bonus payments Henry was scheduled to receive; the court found that "[t]he terms and structure of the trust, as well as the trustee, shall be agreed upon by counsel of the parties, but if unable to agree, by the Court." The trial court also explained that any money remaining in the trust would revert back to Henry at the time his child support obligation to Beacham's child ended.

---

[1] See OCGA § 19-7-43 (d).

On March 28, 2008, the trial court entered a contempt order against Henry, finding that he had failed to pay the first two trust payments on the dates specified, but the court noted that Henry had paid the total sum of $250,000 into his attorney's escrow account and ordered the parties to settle any remaining issues regarding the trust.

On September 25, 2008, the trial court entered an "Order Regarding Trust," which concluded that, because Beacham had satisfied all of Henry's objections regarding the trust, the trust was operative without Henry's signature and should be delivered to the named trustee Wachovia Bank N.A. On November 10, 2008, the trial court entered a "Further Order Regarding Trust and Appointing Trustee," appointing another trustee because Wachovia declined to serve as trustee. On November 13, 2008, this Court granted Henry's application for discretionary appeal from the Final Judgment Order, the Order Regarding Trust, and the Further Order Regarding Trust and Appointing Trustee.

1. As an initial matter, Beacham argues that Henry may not appeal the creation of the trust because his notice of appeal was not filed within 30 days of the August 17, 2007 Final Judgment Order, which directed creation of the trust. Nevertheless, because certain details of the trust were not specified in the August 17 order and because further court action was contemplated until entry of the November 10, 2008 order, this Court has jurisdiction to review the trial court's August 17 Final Judgment Order.[2]

2. Henry contends that the trial court erred in ordering creation of a trust as a security device for future child support payments.

(a) First, Henry argues that the child support guidelines codified in OCGA § 19-6-15 do not authorize use of the trust as a device to secure unaccrued child support obligations. Henry does not challenge the calculations the trial court used to make its support award; he simply argues that the trial court's creation of a trust in addition to the monthly support payments was not authorized by OCGA § 19-6-15. We disagree.

OCGA § 19-6-15 (c) (1) states that

> *[t]he child support guidelines contained in this Code section are a minimum basis for determining the amount of child support and shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent.* This Code section shall be used when the court enters a temporary or permanent child support order in a

---

[2] See *Caswell v. Caswell*, 157 Ga. App. 710 (278 SE2d 452) (1981).

> contested or noncontested hearing or order in a civil action filed pursuant to Code Section 19-13-4. *The rebuttable presumptive amount of child support provided by this Code section may be increased or decreased according to the best interest of the child for whom support is being considered, the circumstances of the parties, the grounds for deviation set forth in subsection (i) of this Code section,* and to achieve the state policy of affording to children of unmarried parents, to the extent possible, the same economic standard of living enjoyed by children living in intact families consisting of parents with similar financial means.

Additionally, the statute goes on to state that the trial court shall set forth in its final judgment the "manner, how often, to whom, and until when the support shall be paid."[3] As referenced in subsection (c) (1) above, the guidelines allow a trial court to deviate from the presumptive amount of child support, and in so doing, the court is required to give "primary consideration . . . to the best interest of the child for whom support . . . is being determined."[4] The guidelines go on to list specific examples in which a deviation may be appropriate, for instance, when parents have calculated monthly incomes higher than $30,000, which is the highest range treated in the guidelines income table.[5] Moreover, a court may also order a deviation for any reason in addition to those listed, if the court determines that such a deviation is in the best interest of the child.[6]

In addition to specifically describing instances in which a trial court may use its discretion to deviate from the calculated child support obligation table in order to meet the best interest of the child, subsection (d) of the statute states that the enumerations within the Code section are "guidelines only" and directs that a court applying the guidelines "shall not abrogate its responsibility in making the final determination of child support based on the evidence presented to it at the time of the hearing or trial."[7] Thus, reading the statute as a whole establishes that the legislature has granted trial courts broad discretion when ruling on child support obligations based on the factors presented to the court at the time of the award.

---

[3] OCGA § 19-6-15 (c) (2) (B).

[4] OCGA § 19-6-15 (i) (1) (A).

[5] OCGA § 19-6-15 (i) (2) (A).

[6] OCGA § 19-6-15 (i) (3). For an in-depth discussion of the calculation of child support under the new Code section, see *Hamlin v. Ramey*, 291 Ga. App. 222, 223-225 (1) (661 SE2d 593) (2008).

[7] OCGA § 19-6-15 (d).

Moreover, under the prior incarnation of the Code, lump sum child support payments and the creation of trust funds for future payments were approved by the Supreme Court of Georgia, even though the guidelines in force at the time did not expressly provide for such payment structures.[8] Although none of these cases directly addresses funded trusts that may only be invaded at the time a monthly payment becomes past due, we find them instructive in the case at bar as examples of the wide latitude Georgia appellate courts have given trial courts in fashioning support awards. In those cases, the appellate courts determined that such awards were acceptable based on the parent's duty to support his or her children until majority, which duty still remains under the new guidelines, and because the trust corpus reverted back to the parent at the time the child reached the age of majority.[9]

Additionally, support for such vehicles appears in the portion of the Code section that provides guidance for courts dealing with a parent's variable income. In explaining the nature of income to be included in gross income, the subsection explains that in accounting for variable income, such as bonuses,

the court . . . may, but is not required to, average or prorate the income over a reasonable specified period of time or require the parent to pay as a one-time support amount a percentage of his or her nonrecurring income, taking into consideration the percentage of recurring income of that parent.[10]

Here, the trial court took into account the bonus payments Henry was set to receive and determined that it was in the best interest of the child to capture a portion of those assets in the trust. While the trial court could have directed that the interest from the trust be paid in conjunction with the periodic child support obligation,[11] the court instead chose to limit payments from the trust to instances in

[8] See, e.g., *Esser v. Esser*, 277 Ga. 97, 97 (586 SE2d 627) (2003) (noting that lump sum child support payments were permissible under the language of the old Code section); *Aycock v. Aycock*, 251 Ga. 104 (303 SE2d 456) (1983) (creating trust including profits from two rental properties to provide monthly child support payments for minor child); *Peyton v. Peyton*, 236 Ga. 119, 121 (3) (223 SE2d 96) (1976) (directing proceeds from sale of marital home be placed into a trust for support of minor child); *Wallace v. Graves*, 229 Ga. 82 (189 SE2d 447) (1972) (trust for the benefit of minor children as part of alimony decree).

[9] See *Gardner v. Gardner*, 264 Ga. 138, 138-139 (441 SE2d 666) (1994) (explaining that the Court's approval of inter vivos trusts was based on the parent's duty to support the child during the parent's lifetime); *Peyton*, 236 Ga. at 122 (3).

[10] OCGA § 19-6-15 (f) (1) (D).

[11] See, e.g., *Collins v. Collins*, 231 Ga. 683 (3) (203 SE2d 524) (1974) overruled on other grounds by *Doyal Dev. Co. v. Blair*, 234 Ga. 261 (215 SE2d 471) (1975).

which Henry failed to pay the periodic sum. The trial court was presented with substantial evidence at the time of the child support award to support its determination that it was in the best interest of Beacham's child for the court to order creation of the trust to cover child support payments in the event that Henry failed to pay the ordered sums. Furthermore, the court correctly ordered that any remaining trust corpus will revert back to Henry when Beacham's child reaches the age of majority.[12] Accordingly, we hold that the trial court's creation of the trust was supported by the language of the child support guidelines as well as prior appellate case law.

(b) Next, Henry contends that using the trust as an anticipatory remedy violates OCGA § 9-5-6, which prevents creditors without liens from "enjoin[ing] their debtors from disposing of property [or] obtain[ing] injunctions or other extraordinary relief in equity." Henry contends that because the trial court did not make findings of fraud or insolvency, the trust cannot be used as a means to pay a hypothetical future child support arrearage.

Pretermitting whether OCGA § 9-5-6 applies in the context of an award of child support, we find that the statute does not preclude the action of the trial court taken here. Equitable remedies are available to a creditor without a lien, if the creditor has shown evidence of waste or mismanagement of assets.[13] Here, the trial court was presented with numerous facts that even in the face of large debts, Henry spent exorbitant amounts of money on cars and jewelry, had amassed no savings over the course of a lucrative seven-year career, and had been in arrears to Beacham several times under the temporary child support order, and the court announced these facts as the basis of its ruling. Under these circumstances, we discern no abuse of discretion by the trial court in creating the trust.

3. Henry further argues that the trial court abused its discretion by directing creation of a trust that compromises the support interests and needs of Henry's other children because the trust only benefits one of his children and seizes assets that otherwise would be available to pay for their support. Henry does not cite any case law to support his argument, but contends that OCGA § 19-6-15 (f) (5) (B) expressly directs subtraction of preexisting child support payments to other children from the defendant's gross income.

Although it is true that the trust only secures child support

---

[12] See *Peyton*, 236 Ga. at 122 (3).

[13] See *Patel v. Patel*, 280 Ga. 292, 294-295 (627 SE2d 21) (2006) (equitable remedies are available when evidence of waste is produced to the trial court); *Frankel v. Frankel*, 212 Ga. 643, 643-644 (2) (94 SE2d 728) (1956) (appointment of receiver in divorce action was an abuse of discretion because there was no evidence "that the defendant is selling, concealing, wasting, mismanaging, or making any effort to dispose of or encumber any part of his holdings or has any intention to do so").

payments to Beacham's child, the court was aware of Henry's other children and the support orders entered for them at the time the court ordered creation of the trust. Furthermore, the trial court considered the other child support orders when it calculated the support award. Because the trust was fully funded with bonus money paid during 2007 and 2008, it did not affect the amount of future income that Henry would have to provide for the other children. Moreover, although it is true that the trust protects the interests of only one child, the trial court did not have the authority to enter trust awards to any of the other children, most of whom do not reside in Georgia.

4. Finally, Henry argues that, assuming the trial court did have the authority to order the creation of the trust, it abused its discretion by ordering such a large amount of money be placed in trust. Henry also contends that the court should have first used its garnishment or contempt power to enforce future child support arrearage before constructing the trust. Based on our determination that the trial court had the discretion to create the trust and that the decision to create the trust was supported by the facts in the record, this argument is unpersuasive. Henry argues that the trust does not take into account any future changes in his income. However, any changes in circumstances in Henry's earnings are not before this Court, and those changes are properly addressed in a modification action.[14] Finally, we find unpersuasive Henry's argument that the trust corpus is too large; Henry has not pointed to any specific calculation error made by the trial court in determining the amount of corpus, and in light of the facts presented to the trial court, we do not, without more, find an abuse of discretion on the part of the court.[15]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 19, 2009 — 

*Kessler, Schwarz & Solomiany, Randall M. Kessler, David A. Webster*, for appellant.
*Robert G. Wellon, Keisha L. Bottoms*, for appellee.

---

[14] Cf. *Fitts v. Fitts*, 231 Ga. 528, 530 (5) (202 SE2d 414) (1973), overruled on other grounds by *Hayes v. Hayes*, 248 Ga. 526 (283 SE2d 875) (1981).

[15] See, e.g., *Peyton*, 236 Ga. at 122 (3).