**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0127. JACKSON v. SANDERS.

DILLARD, Judge.

Doug Jackson filed a petition for modification of custody, seeking additional parenting time with his then 11-year-old son. The child's mother, Lisa Sanders, opposed the petition and filed a counterclaim for past-due child support. After a bench trial, the trial court denied Jackson's petition, awarded Sanders past-due child support, increased the amount of Jackson's monthly child-support payment, issued a new parenting plan, awarded attorney fees to Sanders, and ordered Jackson to pay a supersedeas bond in satisfaction of the court's judgment.

Jackson appeals, arguing that the trial court erred by (1) imputing an annual income to him that was significantly higher than his actual income; (2) finding that he owed Sanders past-due child support; (3) increasing his child-support obligation

above the amount dictated by the relevant guidelines; (4) reducing his parenting time with his son when neither party requested such a reduction; (5) granting attorney fees to Sanders as the prevailing party; and (6) ordering him to pay a $60,000 supersedeas bond. For the reasons set forth *infra*, we reverse in part; vacate in part; and remand for further proceedings consistent with this opinion.

The record shows that Jackson and Sanders divorced in Florida on November 13, 2001, when their son, N. J., was less than a year old, and the final judgment dissolving their marriage (the "2001 Judgment") incorporated an agreement that they reached regarding custody and child support. Specifically, Jackson and Sanders each agreed to move to Atlanta on or before March 17, 2003, and live within a reasonable driving distance of each other so that they could co-parent N. J. on a rotating custody schedule. As to physical custody, the 2001 Judgment provided that, when the parties moved to Atlanta and N. J. was at least two years old, the child would spend two days with one parent, two days with the other parent, and then three days with the first parent, alternating this rotation with each parent on subsequent weeks. However, if either Jackson or Sanders did not reside in Atlanta by the agreed-upon date, the other parent would have primary physical custody of the child. And as to child support, the 2001 Judgment provided that Jackson would pay Sanders $1,005 per month.

2

Shortly before March 17, 2003, Sanders moved to Atlanta, but Jackson did not relocate from Florida to Atlanta until three years later. During that three-year period, Jackson lived in Tampa, but he visited Atlanta weekly to have parenting time with N. J.

In 2005, Jackson filed an action against Sanders in Florida, seeking to enforce the rotating parenting schedule set forth in the 2001 Judgment. But that action was dismissed for lack of jurisdiction, and shortly thereafter, Sanders filed an action in Cobb County, Georgia for modification of custody. In that proceeding, Jackson and Sanders were able to successfully resolve their disputes through mediation, and on August 28, 2007, the trial court approved their new custody agreement (the "2007 Agreement").

Under the 2007 Agreement (which remained in effect until the modification proceeding underlying this appeal), Jackson and Sanders shared joint legal and physical custody of N. J. Specifically, as to physical custody, the parties agreed that N. J. would be with Jackson every other weekend, starting from Friday after school until the next Monday morning. In addition, Jackson would care for N. J. every weekday afternoon after school, and N. J. would also have an overnight visit with Jackson once per week to coincide with N. J.'s involvement in certain sports. The

2007 Agreement also provided that Jackson and Sanders, subject to certain limitations, could select two non-consecutive weeks each year or "floating weeks" to vacation with N. J., and in the summer, the parties would alternate weeks with their son. Jackson's monthly child-support obligation remained the same under the 2007 Agreement.

Jackson and Sanders adhered to the foregoing parenting schedule for the next several years, but on September 6, 2012, Jackson filed the instant petition for modification of custody, asserting that, since the time of the 2007 modification proceeding, there had been a material change in circumstances that warranted such a change in custody. Specifically, he asserted that, due to his son's age, new school, and Sanders's move to a different home, a change in physical custody or parenting time was necessary so that he and Sanders could "continue to share physical custody effectively." Sanders answered, opposing the petition. Subsequently, Sanders filed an amended answer and filed a counterclaim against Jackson, seeking $7,035 in past-due child support. Jackson then amended his petition, asserting that he had satisfied his child-support obligation with Sanders's consent by paying N. J.'s private-school tuition. Thereafter, Sanders filed an amended counterclaim, seeking $14,070 in outstanding child support.

Ultimately, the trial court held a bench trial on Jackson's petition for modification of custody, during which it heard testimony from Jackson, Sanders, a court-appointed guardian ad litem ("GAL"), and a child psychologist hired by Jackson. Thereafter, the court issued an order, finding that Jackson owed Sanders $27,135 in past-due child support, finding that Jackson failed to meet his burden of showing that a change in custody was in N. J.'s best interests,[1] granting primary physical custody to Sanders, and increasing Jackson's child-support obligation from $1,005 to $3,994 per month. The court reserved ruling on Sanders's request for attorney fees.

In addition, the court issued a new parenting schedule, which altered the custody arrangement delineated in the 2007 Agreement. Specifically, the court ordered that Jackson would have physical custody of N. J. on the first and third weekends of the month and that those visits would begin on Friday after school and last until Sunday at 6:00 p.m. The court also ordered that Jackson would have N. J.

---

[1] At the close of Jackson's case, Sanders moved for a directed verdict on his request for a modification of custody, arguing that he failed to meet his burden of showing that there had been a material change in circumstances. The trial court reserved ruling on the motion, but later granted it in the written order. Nevertheless, the court modified the parenting schedule set forth in the 2007 Agreement in several respects as discussed *infra*.

5

overnight for one night on the weeks when he did not have N. J. the following weekend. Additionally, the court ordered that the parties would have equal time with their son in the summer, with N. J. alternating between them each week. Lastly, the court eliminated the optional two-week "floating" period of parenting time that had been included in the 2007 Agreement.

After the court issued its order, Sanders filed a motion for a supersedeas bond, as permitted by OCGA § 5-6-46, requesting that Jackson post a $100,000 bond in satisfaction of the court's judgment. Jackson filed a response, opposing the motion, but the trial court granted it and ordered Jackson to post a $60,000 bond. Also, in a separate order, the trial court awarded Sanders $24,387.71 in attorney fees. This appeal follows.

1. As a preliminary matter, Sanders claims that Jackson did not file a valid notice of appeal from the trial court's order granting her motion for a supersedeas bond because, instead of filing a second notice of appeal after that order was entered, he merely amended his first notice of appeal as to the underlying judgment.[2] In this

---

[2] Sanders also contends that we should not consider Jackson's amended appellate brief because he did not move this Court for leave to file it, but she is mistaken. Jackson did file such a motion, and it was granted in an order dated October 10, 2014.

regard, we have held that, on appeal, we "may consider orders that were entered prior to or contemporaneously with the judgment being appealed, but judgments cannot be considered on appeal if rendered subsequent to the judgment appealed from."[3] Thus, when a supersedeas-bond order is entered *after* an appellant files a notice of appeal from a prior judgment, we lack jurisdiction to consider claims regarding that order unless he or she files a second notice of appeal.[4]

Nevertheless, in the case *sub judice*, Jackson did file a timely notice of appeal after the trial court issued the supersedeas-bond order, and the fact that he styled it as an "amended notice of appeal" is of no consequence. In relevant part, OCGA § 5-6-48 provides:

> Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify

---

[3] *Jaycee Atlanta Dev., LLC v. Providence Bank*, 330 Ga. App. 322, 331 (6) (765 SE2d 536) (2014) (citation and punctuation omitted); *see also Norman v. Ault*, 287 Ga. 324, 331 (6) (695 SE2d 633) (2010); OCGA § 5-6-34 (d).

[4] *See Jaycee Atlanta Dev., LLC*, 330 Ga. App. at 331 (6).

7

definitely the judgment appealed from or that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed.[5]

Here, regardless of how Jackson's amended notice of appeal was styled, it expressly noted that he intended to appeal the trial court's August 11, 2014 judgment regarding "the necessity of a supersedeas bond." As a result, Jackson filed a valid notice of appeal with respect to that order, and we have jurisdiction to consider it.[6]

2. Turning to the merits of Jackson's claims, he first argues that, in imposing an upward modification of his child-support obligation, the trial court erred when it applied OCGA § 19-6-15 (f) (4) (B) and imputed an annual income to him that was significantly higher than his actual income based on an erroneous finding that he

---

[5] OCGA § 5-6-48 (f).

[6] We acknowledge that, traditionally, when notices of appeal are filed as to a trial court's judgment and its subsequent order imposing a supersedeas bond, those appeals are sent to this Court separately and docketed as two different appeals. And typically, under such circumstances, this Court will ultimately consolidate the appeals to be decided together. *See e.g. Gaslowitz v. Stabilis Fund I, LP*, 331 Ga. App. 152 (770 SE2d 245) (2015); *Muhammad v. Power Lending*, LLC, 311 Ga. App. 347 (715 SE2d 734) (2011). But here, the trial court sent Jackson's appeals from both orders to this Court to be docketed as a single appeal presumably because he styled his second notice of appeal as an "amended" notice. Regardless, Jackson nonetheless satisfied his obligation to file a separate notice of appeal as to the supersedeas-bond order, and for the reasons set forth *supra*, we have jurisdiction to review that order.

8

presented no reliable evidence of his income.[7] We disagree, but for the reasons set forth *infra*, we vacate the child-support award and remand for further proceedings consistent with this opinion.

To begin with, we note that, in the appellate review of a bench trial, this Court will not set aside the trial court's factual findings "unless they are clearly erroneous," and we properly give "due deference to the opportunity of the trial court to judge the credibility of the witnesses."[8] Further, we will not disturb an upward modification of

---

[7] We note that, in this proceeding, Sanders never filed a counterclaim seeking an upward modification of child support. In the pre-trial order, Sanders indicated for the first time that she was seeking such a modification, and at trial, the parties litigated that issue without objection. Thus, under OCGA § 9-11-15, Sanders's request for modification of child support was properly treated as if it had been raised in the pleadings. *See* OCGA § 9-11-15 (b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). *Compare Smith v. Smith*, 174 Ga. App. 903, 904-05 (3) (332 SE2d 41) (1985) (holding, in a modification-of-visitation-rights case in which the pleadings did not include a request for modification of child support, that, because there was no transcript of the evidence presented below, this Court must assume that the evidence amended the parties' pleadings and authorized the trial court's verdict with regard to child-support payments) *with Lawrence v. Day*, 247 Ga. 474, 474-75 (277 SE2d 35) (1981) (holding, in a modification-of-custody case, that a trial court erred in imposing an upward revision of child support *sua sponte* when no petition for modification of child support was filed, no such relief was requested, and there was no evidence adduced at the hearing below to support a finding of change in the father's income).

[8] *Autrey v. Autrey*, 288 Ga. 283, 284-85 (2) (702 SE2d 878) (2010) (punctuation omitted).

9

child support if there is any evidence to support it.[9] With this deferential standard of review in mind, we will now consider Jackson's specific claim of error.

In Georgia, determining each parent's monthly gross income is "the first step that a court must take in calculating child support under [our] child[-]support guidelines."[10] And the child-support guidelines define gross income as "all income from any source . . .,whether earned or unearned,"[11] including, *inter alia*, income from self-employment.[12] Further,

> [i]ncome from self-employment includes income from, but not limited to, business operations . . . and rental properties, less ordinary and reasonable expenses necessary to produce such income. Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership, limited liability company, or closely held corporation is defined as gross receipts minus ordinary and reasonable expenses required for self-employment or business operations . . . .[13]

---

[9] *See, e.g.*, *Dyals v. Dyals*, 281 Ga. 894, 895 (1) (644 SE2d 138) (2007).

[10] *Appling v. Tatum*, 295 Ga. App. 78, 80 (2) (670 SE2d 795) (2008).

[11] OCGA § 19-6-15 (f) (1) (A).

[12] OCGA § 19-6-15 (f) (1) (A) (iii).

[13] OCGA § 19-6-15 (f) (1) (B).

Generally, income and expenses from self-employment or operation of a business should be "carefully reviewed by the court or the jury to determine an appropriate level of gross income available to the parent to satisfy a child support obligation."[14] But when cases with established orders are

> reviewed for modification and a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or jury has no other reliable evidence of such parent's income or income potential, the court or jury may increase the child support of the parent failing or refusing to produce evidence of income by an increment of at least 10 percent per year of such parent's gross income for each year since the final child support order was entered or last modified and shall calculate the basic child support obligation using the increased amount as such parent's gross income.[15]

In the case *sub judice*, the parties presented testimony and other evidence, including Domestic Relations Financial Affidavits ("DRFAs"), to establish their respective gross incomes such that the trial court could determine whether to impose an upward modification of Jackson's monthly child-support obligation, which had

---

[14] *Id.*

[15] OCGA § 19-6-15 (f) (4) (B).

11

remained $1,005 per month since the 2001 Judgment was entered. It was undisputed that, at the time of their divorce, Jackson had an annual income of $250,000, while Sanders earned $85,000 per year.

At the time of trial, Sanders's 2013 W-2 reflected that she had an annual salary of $256,817.48, but she testified that her income would be reduced by $50,000 in 2014 because she would be foregoing certain bonuses. Jackson, who was employed by and owned a 50% partnership interest in a marketing company, submitted his K-1 Schedules (or pass-through partnership income) for 2011 and 2012. These documents reflect that Jackson received $193,321 and $172,053 in partnership income for 2011 and 2012, respectively. However, Jackson testified that, at the time of trial in March 2014, he had not yet received his K-1 Schedule for 2013.[16] Nevertheless, his DRFA reflected that his monthly gross income was $13,541 (or $162,492 per year). Jackson testified that he wanted his accountant to testify regarding his finances, and he knew that Sanders had subpoenaed his accountant to do so. But when he learned about the subpoena, he told his accountant that they had already provided the court with all of the necessary documentation, and thereafter, his accountant declined to testify.

---

[16] Jackson did provide an "employee earnings record" for 2013 (generated by his company), reflecting that he earned $162,500 in partnership income.

Ultimately, the trial court determined that Jackson had not been "forthcoming with proof of his income and did not provide sufficient information to determine his gross income." And based on this finding, the trial court calculated Jackson's income under OCGA § 19-6-15 (f) (4) (B), applying a four-percent increase to his salary at the time of the 2001 Judgment for each year since that judgment was entered. In doing so, the trial court imputed an annual salary of $380,000 to Jackson, and based partly on this annual income, the court increased his monthly child-support payment from $1,005 to $3,994.

Jackson now argues that the trial court erred in finding that he presented no reliable evidence of his income when he provided his K-1 schedules from two prior years because tax returns are specifically identified as reliable evidence by OCGA § 19-6-15 (f) (4) (B). He ignores, however, that his "gross income" for purposes of calculating child support includes, *but is not limited to*, the income reflected on his K-1 schedules.[17] Indeed, as previously noted, gross income is defined broadly under the child-support guidelines, and it includes income "from any source . . . whether

---

[17] *See Simmons v. Simmons*, 288 Ga. 670, 670 (1) (706 SE2d 456) (2011) (holding that trial court did not err in calculating a husband's child support payment when it included K-1 income in his annual income); *Appling*, 295 Ga. App. at 80-81 (2) (holding that trial court did not abuse its discretion when it included K-1 income in its calculation of child support).

13

earned or unearned."[18] And here, the evidence presented below shows that Jackson had other self-employment income in addition to the income reflected on his K-1 schedules, but based on his testimony and the other evidence presented at trial, it was difficult for the court to discern the amount of that income.[19]

For example, Jackson testified that he received income from two rental properties, but the record is devoid of any documentation such as leases, copies of checks, or bank records to substantiate the amount of that income. In fact, Jackson admitted that he failed to include the income he received from his rental properties

---

[18] OCGA § 19-6-15 (f) (1) (A).

[19] The dissent states that the evidence at trial included "bank records," and that, in her brief, Sanders claimed to have presented Jackson's payment history to one of his company's largest clients. While a review of the record and the parties' briefs indicates that such evidence may have been produced during discovery, no such evidence is included in the record or in the exhibits presented to the trial court, and we do not consider facts or evidence that were not before the trial court. *See Atkinson v. City of Atlanta*, 325 Ga. App. 70, 72 n.3 (752 SE2d 130) (2013) ("[W]e do not take evidence from the briefs of parties, we do not get evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court." (punctuation omitted)). Moreover, while the parties reference this evidence in their appellate briefs, they provide no record citations to support those references, and "it is not the function of this Court to cull the record on behalf of a party in search of instances of error." *Fortson v. Brown*, 302 Ga. App. 89, 90 (1) (690 SE2d 239) (2010) (punctuation omitted).

14

in his DRFA.[20] Jackson further admitted that, while he owed $15,000 on a car loan, he did not include that information on the portion of the DFRA that required him to list "payments to creditors." Further, Jackson testified that his DFRA mistakenly indicated that he paid child support for children other than N. J.

The evidence presented below also shows that, in 2013, Jackson's business made approximately $2.7 million, that it had approximately $2.4 million in expenses, and that, out of the $300,000 of remaining funds, his company made $245,000 in payments to a corporate credit card. And while Jackson testified that the credit card was used solely for business purposes, he presented no financial documentation or itemization of the charges to show that he did not use the card for personal expenses. Similarly, Jackson also testified that, although there were checks written out of his company's corporate accounts for amounts sometimes as large as $60,000, he did not produce copies of those checks to show that they were for business, rather than personal, expenses. In this regard, we have held that, in calculating a parent's income, allowable business expenses may be included in a parent's gross monthly income

---

[20] *See* OCGA § 19-6-15 (f) (1) (B) (defining self-employment income as including, *inter alia*, income from rental properties).

15

"upon a showing that the expenses personally benefitted the obligor."[21] But based on the evidence adduced at trial, it was unclear whether Jackson received a personal benefit from the $245,000 paid to the corporate credit card or from certain business checks. As a result, the trial court could not determine the amount of his "gross receipts minus ordinary and reasonable expenses required for self-employment or business operations."[22]

In light of the foregoing, the trial court found that Jackson's testimony that he made approximately $13,000 per month was simply not credible. And as previously noted, we give due deference to the trial court's opportunity to judge the credibility of witnesses.[23] Moreover, we are not persuaded by Jackson's argument that OCGA § 19-6-15 (f) (4) (B) is inapplicable merely because he provided two tax documents,

---

[21] *Lewis v. Scruggs*, 261 Ga. App. 573, 575 (2) (583 SE2d 240) (2003) (punctuation omitted); *see Simmons*, 288 Ga. at 671 (2) (holding that certain fringe benefits received through husband's company could be included in his gross income such as the company's monthly car payment for a car that he used, the company's payment of his cell-phone bill, and his use of a company-issued credit card for meals and certain social activities).

[22] OCGA § 19-6-15 (f) (1) (B).

[23] *See Autrey*, 288 Ga. at 284-85 (2).

16

which are expressly considered reliable under that statutory provision. As our Supreme Court has explained,

> [w]hen we consider the meaning of a statutory provision, we do not read it in isolation, but rather, we read it in the context of the other statutory provisions of which it is a part. All statutes relating to the same subject matter are to be construed together, and harmonized wherever possible.[24]

And here, while Jackson's K-1s may be reliable evidence of *a portion* of his income, the trial court's finding that those documents were not reliable evidence of his *gross income*, as broadly defined in OCGA § 19-6-15 (f) (1) (A),[25] is not wholly unsupported by the evidence.[26] Indeed, it was undisputed that Jackson had other sources of income in addition to the pass-through partnership income reflected on his

---

[24] *Hartley v. Agnes Scott Coll.*, 295 Ga. 458, 462 (2) (b) (759 SE2d 857) (2014) (punctuation omitted); *accord Cavalier Convenience, Inc. v. Sarvis*, 305 Ga. App. 141, 146 (699 SE2d 104) (2010); *see In re L.T.*, 325 Ga. App. 590, 591-92 (754 SE2d 380) (2014) (explaining that in analyzing the meaning of a statute, "we must afford the statutory text its plain and ordinary meaning, [and] consider the text contextually" (punctuation and footnote omitted)); *Holcomb v. Long*, 329 Ga. App. 515, 517-18 (1) (765 SE2d 687) (2014) (same).

[25] *See* OCGA 19-6-15 (f) (1) (A) (defining gross income for purposes of calculating child support as "*all income* from *any source* . . . whether earned or unearned" (emphasis supplied)).

[26] *See Carden v. Warren*, 269 Ga. App. 275, 276 (1) (a) (603 SE2d 769) (2004) (noting that a trial court's factual findings will not be disturbed on appeal unless they are "wholly unsupported by the evidence" (punctuation omitted)).

K-1s, including income from his rental properties, which is included as income under OCGA § 19-6-15 (f) (1) (B). Furthermore, as to the other evidence presented regarding Jackson's income, such as his own testimony and his DRFA, we reiterate that it was for the trial court to determine whether Jackson's own representations regarding his income were credible, and we will not disturb the trial court's factual findings in this regard if there is any evidence to support them.[27] And as detailed *supra*, Jackson admitted to several inaccuracies and omissions in his DRFA.

In sum, given the lack of evidentiary support for Jackson's testimony regarding his business's finances and income from his rental properties; the inaccuracies and omissions in his DRFA; and his seemingly disingenuous testimony that, although he wanted his accountant to testify regarding his finances, he nevertheless told his accountant that such testimony was unnecessary, we simply cannot say that the trial court abused its discretion in finding that Jackson failed to produce reliable evidence of his gross income and thus, calculating his gross income under OCGA § 19-6-15 (f) (4) (B).[28]

---

[27] *See Patel v. Patel*, 285 Ga. 391, 391 (1) (a) (677 SE2d 114) (2009).

[28] *See* OCGA § 19-6-15 (f) (4) (B); *Brogdon v. Brogdon*, 290 Ga. 618, 619-20 (1), (2) (723 SE2d 421) (2012) (affirming the trial court's determination that a parent, who claimed to make $2,916.67 per month, had a gross monthly income of $12,000

Nevertheless, once the trial court exercised its discretion and chose to apply

OCGA § 19-6-15 (f) (4) (B), it failed to calculate Jackson's income as mandated by

---

when the parent had ownership interests in two companies and a residential repair partnership, he made large purchases and cash withdrawals, and he used his business account to pay a substantial amount of personal expenses); *Autrey*, 288 Ga. at 285 (2) (affirming trial court's finding that husband's gross income was higher than the $150,000 annual income claimed in his DRFA when there was evidence that he owned a profitable home-building company and the parties owned several residential lots and a multi-million dollar home); *Banciu v. Banciu*, 282 Ga. 616, 617-18 (1) (652 SE2d 552) (2007) (affirming the trial court's finding that a husband, who claimed to make $48,000, had a gross income of at least $90,000 per year based, in part, on his ownership interest in a profitable company, his ownership of rental properties, and his history of high spending); *see also Vereen v. Vereen*, 284 Ga. 755, 756 (1) (670 SE2d 402) (2008) ("[I]n the absence of any mathematical formula, fact-finders are given a wide latitude in fixing the amount of alimony and child support under the evidence as disclosed by the record and all the facts and circumstances of the case." (punctuation omitted)). We note that the dissent contends that, instead of "misapplying" OCGA § 19-6-15 (f) (4) (B), the trial court should have simply used its discretion in fixing the amount of child support based on the evidence before it. As evidenced by the cases cited herein, which were all decided *prior* to the enactment of OCGA § 19-6-15 (f) (4) (B), we agree that trial courts have been given broad discretion to impute a higher salary to a parent when the evidence suggests that the parent has misrepresented his or her actual gross income. And we reference these opinions because currently, there are no Georgia cases specifically addressing the application of OCGA § 19-6-15 (f) (4) (B), and these opinions are the most analogous to the instant case in demonstrating that a trial court may exercise its discretion in determining a parent's salary when evidence suggests that a parent is misrepresenting his or her income. Nevertheless, now that OCGA § 19-6-15 (4) (B) has been enacted, trial courts have the additional option of applying the formula set forth in that statute in cases where, as here, the court finds that the parent has failed to present reliable evidence of his or her gross income as defined under OCGA § 19-6-15 (f) (1) (A).

that statute. Specifically, OCGA § 19-6-15 (f) (4) (B) provides that, when a parent fails to produce reliable evidence of income, the court

> *may* increase the child support of the parent failing or refusing to produce evidence of income by an increment of *at least* 10 percent per year of such parent's gross income for each year since the final child support order was entered or last modified and *shall* calculate the basic child support obligation using the increased amount as such parent's gross income.[29]

And as noted by Jackson on appeal, the trial court erred by only applying a four percent incremental increase to calculate his child-support obligation. Suffice it to say, the application of OCGA § 19-6-15 (f) (4) (B) undoubtedly results in an extremely harsh penalty for parents who fail to produce reliable evidence of their incomes. But when the language of a statute is "plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly."[30] And OCGA § 19-6-15 (f) (4) (B) plainly provides that when a parent fails to produce reliable evidence of his or her gross income, the trial court has the discretion to determine whether such a Draconian penalty is warranted. Thus, while the trial court

---

[29] (emphasis supplied).

[30] *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (punctuation omitted).

20

did not abuse its discretion in finding that Jackson failed to present reliable evidence of his gross income, we nevertheless vacate the trial court's child-support award and remand for the court to consider whether the application of OCGA § 19-6-15 (f) (4) (B) is still warranted, and if so, to recalculate Jackson's child-support obligation using the formula set forth in that statute.

3. Jackson next argues that the trial court erred in finding that he owed $27,135 in past-due child support. We agree.

The undisputed evidence shows that, from the time of the 2001 Judgment until July 2012, Jackson paid $1,005 per month to Sanders in child support. However, in July 2012, Jackson and Sanders agreed that, instead of paying child support directly to Sanders, Jackson would pay an equivalent amount to N. J.'s new private school for Sanders's half of the tuition. Both parties testified that this was their agreement, and Jackson presented an email from July 2012, in which Sanders expressly consented to this arrangement. In fact, Sanders even signed a printed copy of the email with the inscription, "okay to pay $1,005 directly to [school] for August, September, and October." Sanders also refunded three months of child support to Jackson for the months of May, June, and July of 2012 to reimburse him for her half of tuition payments that he had already made. At trial, Sanders did not dispute that she agreed

21

to this financial arrangement or that Jackson had adhered to it since July 2012, but she testified that she told Jackson that she would only agree to this alternative child-support arrangement if he would agree not to "take [her] back to court."

Despite Sanders's concession that she and Jackson entered into this alternative child-support arrangement, the trial court ruled in Sanders's favor as to her counterclaim for unpaid child support, finding that "the parties [could not] modify child support without a court order." Thus, the court ordered Jackson to pay $27,135 in past-due child support for the months when he made payments to N. J.'s school instead of to Sanders.[31] The trial court was indeed correct that, "[w]hile parties may enter into an agreement concerning modification of child support, the agreement becomes an *enforceable* agreement only when made the order of the court."[32]

---

[31] Jackson correctly notes that it was undisputed that he did not begin paying child support to N. J.'s private school until May 2012, and the trial court erroneously found that he began doing so in January of that year. But because, as discussed *infra*, the trial court erred in awarding *any* past-due child support to Sanders, this error by the trial court is moot.

[32] *Pearson v. Pearson*, 265 Ga. 100, 100 (454 SE2d 124) (1995) (citation omitted) (emphasis in original); *see also Robertson v. Robertson*, 266 Ga. 516, 517 (1) (467 SE2d 556) (1996) ("It is well-settled that a modification action under OCGA § 19-6-19 is the sole means by which a child support award included in a divorce decree may be modified. While the parties are free to enter into an agreement purporting to modify the child[-]support obligation, that agreement becomes enforceable only when incorporated in an order of the court . . . ." (citation omitted)).

22

Nevertheless, our Supreme Court has recognized that there are certain equitable exceptions to that general rule.[33] And included among these "equitable exceptions" are

> situations where the mother has consented to the father's voluntary expenditures as an alternative to his child[-]support obligation, or where the father has been in substantial compliance with . . . the divorce decree, for example, where he has discontinued child support payments while he had the care and custody of the children and supported them at the mother's request.[34]

Here, Jackson and Sanders did not modify the amount of Jackson's child-support obligation as set forth in the 2001 Judgment. Instead, they merely agreed that Jackson would pay an equivalent amount for *Sanders's* half of N. J.'s private-school

---

[33] *See Daniel v. Daniel*, 239 Ga. 466, 468 (2) (238 SE2d 108) (1977) ("Several jurisdictions, including many which support the above general rule [that parents may not modify a child-support obligation without approval from the court], have held that a father may be given credit if equity would so dictate under the particular circumstances involved, provided that such an allowance would not do an injustice to the mother.").

[34] *Id.* (citations omitted); *see also Skinner v. Skinner*, 252 Ga. 512, 514 (2) (314 SE2d 897) (1984) (distinguishing *Daniel*, but acknowledging that "credit for the father's voluntary expenditures consented to by the mother as alternatives to child support, or excusal for nonpayment of support obligations where the mother has requested that the father have custody of the children and he supported them during such period, may be appropriate so that the father is not required to pay child support twice when there is no resulting unfairness to the mother or children").

tuition as an alternative to paying her directly. And our Supreme Court has held that such an agreement was valid under nearly identical circumstances.[35] Thus, the trial court erred in ordering Jackson to pay $27,135 in past due child support, and we reverse its judgment in this respect.[36]

4. Jackson also argues that the trial court erred in deviating upward from the presumptive child-support amount without making sufficient written findings of fact and without sufficient evidentiary support. And while we disagree with Jackson that the high-income deviation was impermissible, we do agree that the trial court erred by failing to make the requisite written findings of fact.

In granting Sanders's request for an increase in Jackson's monthly child-support obligation, the trial court imposed a "high-income deviation" of $1,100. The child-support guidelines provide that, for parents with a combined adjusted income

---

[35] *See Nagle v. Epstein*, 241 Ga. 612, 612 (247 SE2d 102) (1978) (affirming the trial court's judgment that the husband was not in contempt for failing to pay past-due child support when he testified that the parties agreed that the wife would accept the his payment of their son's private-school tuition in lieu of an equivalent amount of past-due child support and the wife did not testify otherwise).

[36] *See id.*; *but see Crist v. Crist*, 243 Ga. 796, 796 (256 SE2d 780) (1979) (affirming the trial court's order requiring father to pay past-due child support when, under an informal agreement between the parties, the father *ceased* making child-support payments during months when the minor child lived with him).

of up to $30,000 per month[37] and only one child, the presumptive amount of child

support is $2,236 per month.[38] But the guidelines also provide that, when the

combined adjusted income of the parents exceeds $30,000 per month, "the court . .

. may consider upward deviation to attain an appropriate award of child support for

high-income parents which is consistent with the best interest of the child."[39]

Thus, in this case, the court was authorized to consider an upward deviation

from the presumptive child-support amount because Jackson and Sanders have a

combined monthly income of over $30,000.[40] However, the trial court failed to make

certain mandatory findings of fact in its written order to support its decision that such

a deviation was warranted. Indeed, OCGA § 19-6-15 (c) (2) (E) provides that, if a

---

[37] The trial court found that Jackson and Sanders had gross monthly incomes of $31,666.66 and $17,166.66, respectively. We acknowledge Jackson's argument that the high-income deviation was impermissible because the trial court erred in calculating his income under OCGA § 19-6-15 (f) (4) (B), but as explained in Division 2 *supra*, the trial court did not err in that respect.

[38] *See* OCGA § 19-6-15 (o).

[39] OCGA § 19-6-15 (i) (2) (A).

[40] *See id*.; *see also Henry v. Beacham*, 301 Ga. App. 160, 163 (2) (a) (686 SE2d 892) (2009) (noting that the child-support guidelines list specific examples in which a deviation may be appropriate, including when the parents have a calculated monthly income higher than $30,000, which is the highest range treated in the guidelines income table).

trial court determines that a deviation from the presumptive child support amount is applicable, the court must make written findings of fact that must include:

(i) The reasons the court . . . deviated from the presumptive amount of child support;

(ii) The amount of child support that would have been required under this Code section if the presumptive amount of child support had not been rebutted; and

(iii) A finding that states how the court's . . . application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support and how the best interest of the child who is subject to the child support determination is served by deviation from the presumptive amount of child support.[41]

In its written order, the trial court noted that it was imposing a high-income deviation of $1,100 based on its finding "that it [was] in the minor child's best interest so that the child may have the same standard of living at each parent's home." And our Supreme Court has recognized that "[a] fundamental purpose of the child-

---

[41] OCGA § 19-6-15 (c) (2) (E); *see Fladger v. Fladger*, 296 Ga. 145, 147 (2) (765 SE2d 354) (2014) (explaining that if a trial court determines that a deviation from the presumptive child-support amount is applicable, the court must include written findings of fact under OCGA § 19-6-15 (c) (2) (E)); *Wallace v. Wallace*, 296 Ga. 307, 308 (1) (766 SE2d 452) (2014) (same).

support guidelines is to achieve the state policy of affording to children of unmarried parents, to the extent possible, the same economic standard of living enjoyed by children living in intact families consisting of parents with similar financial means."[42] Thus, in finding that an upward deviation was in N. J.'s best interests so that he could enjoy the same standard of living with each parent, the trial court satisfied the statutory requirements that it set forth its reason for deviating from the presumptive child-support amount and that it explain why such a deviation is in the child's best interests.[43]

However, the trial court's order failed to set forth the presumptive child-support amount that would have been required under the guidelines absent the upward deviation, as required by OCGA § 19-6-15 (c) (2) (E) (ii),[44] or to explain how "the child[-]support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support," as required by OCGA § 19-6-15

---

[42] *Fladger*, 296 Ga. at 147 (2), *quoting* OCGA 19-6-15 (c) (1).

[43] *See* OCGA § 19-6-15 (c) (2) (E) (i) and (iii).

[44] *See Urquhart v. Urquhart*, 272 Ga. 548, 550 (2) (533 SE2d 80) (2000) ("OCGA § 19-6-15 (b) provides guidelines for the computation of the child support award and the guidelines are the expression of the legislative will regarding the calculation of child support and *must be considered* by any court setting child support." (punctuation omitted) (emphasis supplied)).

(c) (2) (E) (iii). Presumably, the trial court found that the application of the guidelines would be unjust or inappropriate because Jackson had a substantially higher income than Sanders, but when reviewing deviations from the guidelines the General Assembly has enacted for child-support determinations, we are not at liberty to "rely on implications or our own assumptions."[45] Rather, the trial court's written findings must "connect the dots."[46]

And here, because the trial court failed to make all of the mandatory written findings in support of the child-support award, which we have already determined in Division 2 *supra* must be vacated, we remand the case for the court to make such findings. Specifically, on remand, the court, if it is to apply a high-income deviation, must make written findings that (1) set forth the presumptive amount of child support applicable in this case; (2) articulate why the application of the child-support guidelines would be unjust or inappropriate considering the relative ability of each

---

[45] *Fladger*, 296 Ga. at 149 (2).

[46] *Id.*

28

parent to provide support; and (3) restate why an upward deviation is in N. J.'s best interests.[47]

5. Next, Jackson argues that the trial court erred in *sua sponte* reducing his parenting time with his son. Again, we agree.

At the outset, we note that a trial court's decision regarding a change in custody/visitation will be upheld on appeal unless "it is shown that the court clearly abused its discretion."[48] Furthermore, a trial court faced with a petition for modification of child custody is "charged with exercising its discretion to determine what is in the child's best interest."[49] And where there is any evidence to support the

---

[47] *See id.* (reversing a child-support award and remanding for the trial court to make the necessary written findings of fact to "explain *how* the application of the presumptive child[-]support amount would be unjust or inappropriate considering the relative ability of each parent to provide support and *how* the best interest of the children is served by the deviation" (emphasis in original)); *Strunk v. Strunk*, 294 Ga. 280, 282 (2) (754 SE2d 1) (2013) ("Because the trial court failed to make all of the necessary findings of fact required by the statute, we reverse the judgment related to this issue and remand for the trial court to redetermine the child support award and support any . . . deviation with the mandatory written findings."); *Brogdon*, 290 Ga. at 623 ("We have described the written findings [required under OCGA § 19-6-15 (c) (2) (E)] as 'mandatory' and held that, when any of the required findings are omitted, we have no choice but to reverse the trial court's judgment and remand the case to the trial court for further proceedings." (punctuation omitted)).

[48] *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013).

[49] *Id.* (punctuation omitted).

trial court's ruling, "a reviewing court cannot say there was an abuse of discretion."[50] With these guiding principles in mind, we turn now to Jackson's specific claim of error.

As noted *supra*, Jackson filed his initial petition for modification of custody, seeking additional parenting time with N. J. and asserting that there had been a material change in circumstances with regard to the child's age, his new school, and Sanders's move to a home farther away from Jackson. Sanders opposed this petition, and in the pre-trial order, she indicated that she wanted the 2007 Agreement to remain unchanged, except that she be granted primary physical custody. At trial, the evidence showed that, when N. J. was in elementary school, Jackson had parenting time with him every weekday after school. But when N. J. started middle school in 2012, Jackson's parenting time on weekdays decreased due to N. J.'s increased involvement in school-related and extra-curricular activities. The court-appointed GAL testified that this decrease in Jackson's parenting time was the natural result of N. J. getting older and that it was not possible to modify the parenting schedule to account for the loss of that time. As to Sanders's move, there was testimony that she and Jackson initially lived within walking distance of each other, but at some point, Sanders

---

[50] *Id.*

moved five miles farther away. Jackson contends that this move also reduced his time with N. J.

In its written order, the trial court found that Jackson failed to meet his burden of showing a material change in circumstances to warrant a modification of custody, and it granted a directed verdict in favor of Sanders as to Jackson's petition. Nevertheless, the trial court also granted primary physical custody to Sanders, and issued a revised custody schedule, which reduced Jackson's parenting with his son. Specifically, under the 2007 Agreement, Jackson had custody of N. J. every other weekend from Friday after school until the next Monday morning, but under the new parenting plan, Jackson would have custody of N. J. the first and third weekends of every month from Friday after school until Sunday at 6:00 p.m. Thus, the court eliminated the Sunday overnight visit on Jackson's weekends with N. J., as well as any weekend visits that he might have had during a month with five weekends. Further, under the 2007 Agreement, N. J. had an overnight visit with Jackson every week, but under the new parenting plan, he only had such visits every other week. In addition, based on the GAL's recommendation, the court eliminated the two "floating weeks" per year that were included in the 2007 Agreement. However, the court did not follow GAL's recommendation that Jackson be given additional time

with N. J. in the summer or that N. J.'s weekends with Jackson last until Monday morning (as opposed to Sunday night).

Jackson contends that the trial court erred when it modified the parties' then-current parenting schedule *sua sponte* and reduced his parenting time with N. J. In this regard, the Supreme Court of Georgia has long held that, "[w]here an award of custody of a minor child has been duly made, it is conclusive on the parties unless there are new and material conditions and circumstances substantially affecting the interest and welfare of the child."[51] And to authorize a change of custody, the court must find "(a) that there has been a change in conditions affecting the child[], and (b) that the welfare of the minor[] requires a modification of the original judgment."[52] Finally, although the trial court is given wide discretion in such cases, it is, nevertheless, "restricted to the evidence, and hence [it] is unauthorized to change

---

[51] *Bagley v. Bagley*, 226 Ga. 742, 743 (177 SE2d 255) (1970); *accord Danner v. Robertson*, 221 Ga. 516, 517 (1) (145 SE2d 554) (1965); *Adams v. Heffernan*, 217 Ga. 404, 405 (122 SE2d 735) (1961).

[52] *Danner*, 221 Ga. at 517 (1) (punctuation omitted); *see Fox v. Korucu*, 315 Ga. App. 851, 854 (729 SE2d 16) (2012) ("A trial court is authorized to modify a custody award upon a showing of new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child. The proof must show *both a change in conditions and an adverse effect on the child*." (punctuation omitted) (emphasis in original)).

32

custody where there is no evidence to show new and material conditions that thus affect the welfare of the child[].”[53]

In this case, the trial court expressly found that there had been no material change in circumstances to justify a change in custody, and it made no finding that N. J.'s welfare required such a modification. Additionally, it was undisputed that N. J. has a great relationship with both parents, and there was no evidence presented to suggest that a reduction in Jackson's parenting time was in the child's best interests. In fact, the GAL even recommended that the trial court *increase* Jackson's parenting time in the summer since it was not possible to do so during the school year.

In sum, because there had been no material change in circumstances and no evidence suggested N. J.'s welfare required a modification of custody, the trial court was not authorized to modify the 2007 custody order by altering the parties' parenting

---

[53] *Danner*, 221 Ga. at 517 (1) (punctuation omitted); *accord Daniel v. Daniel*, 250 Ga. App. 482, 484 (2) (552 SE2d 479) (2001) .

schedule and awarding primary physical custody to Sanders.[54] Accordingly, we reverse the trial court's judgment in this respect as well.

6. Jackson next argues that the trial court erred in awarding $24,384.71 in attorney fees to Sanders as the "prevailing party." In light of our holdings herein (which reverse several portions of the trial court's judgment), we must vacate the trial court's fee award and remand the case so that the court may reconsider whether Sanders is still entitled to attorney fees as the prevailing party, and if so, in what amount.

We also note that the appellate record, as it stands now, is devoid of any testimony from Sanders's attorney, billing records, or any other evidence to support the amount of the fee award. In this case, attorney fees were awarded under OCGA

---

[54] *See Fox*, 315 Ga. App. at 854 (noting that a modification of a prior custody order requires proof of a change in conditions and an adverse affect on the child); *Weickert v. Weickert*, 268 Ga. App. 624, 627 (1) (602 SE2d 337) (2004) (noting that "a change of custody may be granted *only if* a new and material change in circumstances affects the child" (punctuation omitted) (emphasis supplied)).

§§ 19-9-3[55] and 19-6-15,[56] and there appears to be no Georgia case addressing the requirement that an attorney-fee award must be reasonable in the context of those recently enacted statutes. Nevertheless, the plain language of OCGA § 19-9-3 (g) provides that the award must be "reasonable,"[57] and in reviewing fee awards in other contexts, we have long held that "an award of attorney fees and costs under Georgia law can only be authorized if there is sufficient proof of the actual costs and the reasonableness of those costs."[58] Indeed, as a general rule, "[e]vidence must be presented from which the trial court can determine what portion of the total amount

---

[55] OCGA § 19-9-3 (g) ("[T]he judge may order reasonable attorney's fees and expenses of litigation, experts, and the child's guardian ad litem and other costs of the child custody action and pretrial proceedings to be paid by the parties in proportions and at times determined by the judge.").

[56] OCGA 19-6-15 (k) (5) ("In proceedings for the modification of a child[-]support award pursuant to the provisions of this Code section, the court may award attorney's fees, costs, and expenses of litigation to the prevailing party as the interests of justice may require.").

[57] *See supra* note 55.

[58] *Reynolds v. Clark*, 322 Ga. App. 788, 790 (1) (746 SE2d 266) (2013) (punctuation omitted) (reviewing an award of attorney fees granted pursuant to OCGA § 19-15-14); *accord Dave Lucas Co. v. Lewis*, 293 Ga. App. 288, 293 (5) (666 SE2d 576) (2008); *see Daniel v. Smith*, 266 Ga. App. 637, 638 (1), 640 (2) (597 SE2d 432) (2004) (reviewing the grant of attorney fees pursuant to OCGA § 13-6-11and noting that an award of fees is unauthorized if the party seeking those fees fails to prove the actual costs of his attorneys and the reasonableness of those costs).

of attorney time and litigation expenses was attributable to the pursuit or defense of claims for which attorney fees are recoverable and what portion of the attorney's time was spent on matters that are not recoverable."[59] Moreover, while OCGA §§ 19-9-3[60] and 19-6-15[61] provide the trial court with broad discretion in determining *when* to award attorney fees, nothing in the language of those statutes suggests that, in the context of a custody-modification proceeding, a trial court may award an arbitrary amount of attorney fees based solely on speculation or guesswork.[62]

Thus, to the extent that, upon remand, the trial court finds that an award of attorney fees to Sanders is still warranted, it is instructed to articulate the evidentiary basis for the amount awarded.[63]

---

[59] *Reynolds*, 322 Ga. App. at 791 (1).

[60] *See supra* note 55.

[61] *See supra* note 56.

[62] *See Leon v. Monterrey Mexican Rest. of Wise, Inc.*, 305 Ga. App. 222, 228 (3) (699 SE2d 423) (2010) (noting, in the context of reviewing the denial of a request for attorney fees under OCGA § 13-6-11, that "[i]t is well established in this State that an award of attorney fees cannot be based upon guesswork or speculation").

[63] At the conclusion of trial, the trial court instructed the parties to submit briefs regarding Sanders's request for attorney fees within 10 days. However, those briefs and any evidence pertaining to them were omitted from the record on appeal, and thus the appellate record is devoid of any evidence regarding the attorney fees that Sanders incurred during this litigation.

7. Lastly, Jackson argues that the trial court erred in requiring him to pay a $60,000 supersedeas bond in satisfaction of past-due and future child-support payments. Once again, we agree.

OCGA § 5-6-46 (a) provides, in relevant part:

> In civil cases . . . upon motion by the appellee, made in the trial court before or after the appeal is docketed in the appellate court, the trial court shall require that supersedeas bond or other form of security be given with such surety and in such amount as the court may require, conditioned for the satisfaction of the judgment in full, together with costs, interest, and damages for delay if the appeal is found to be frivolous.

Here, upon Sanders's motion, the trial court ordered Jackson to post a $60,000 supersedeas bond in satisfaction of the court's "judgment in full, together with costs, and interests, and damages for delay, if for any reason the appeal is dismissed or is found to be frivolous." However, the only monetary judgment against Jackson was the court's award of $27,135 in past-due child support to Sanders. And given our holding in Division 3 *supra* (*i.e.*, that the trial court erred in finding that Jackson owes any past-due child support), the court likewise erred in ordering a Jackson to pay a supersedeas bond in satisfaction of that judgment. Thus, we reverse the trial court's grant of Sanders's motion for a supersedeas bond.

37

For all of the foregoing reasons, we reverse the trial court's award of past-due child support, its *sua sponte* modification of the parties' then-current custody agreement, and its order requiring Jackson to pay a supersedeas bond; and vacate the child-support award, as well the award of attorney fees to Sanders. We remand the case for the trial court to (1) reconsider its application of OCGA § 19-6-15 (f) (4) (B) in calculating Jackson's gross income in light of the statutory formula noted *supra*, (2) make the requisite written findings to support its imposition of the high-income deviation if, upon remand, it still chooses to grant an upward modification of child support that imposes such a deviation, and (3) reconsider Sanders's request for attorney fees at the appropriate time.

Given the lack of record evidence regarding the attorney fees that Sanders incurred, the court may wish to hold a hearing on that matter, and if the court determines that a fee award is still warranted, it is instructed to explain the evidentiary basis for any amount awarded.

*Judgment reversed in part; vacated in part; and case remanded with direction. Ray, McMillian, JJ., concur. Ellington, P. J., concurs in judgment only. Barnes, P. J., Phipps, P. J., and McFadden, J., concur in part and dissent in part.*

38

A15A0127. JACKSON v. SANDERS.

MᴄFᴀᴅᴅᴇɴ, Judge, concurring in part and dissenting in part.

I concur in all of the majority opinion except Division 2, from which I respectfully dissent. In Division 2 the majority affirms the trial court's decision to invoke OCGA § 19-6-15 (f) (4) (B) to calculate Jackson's income in this case. The plain language of that code section indicates that it applies only in cases where "a parent fails to produce reliable evidence of income . . . and the court or jury has no other reliable evidence of such parent's income[.]" OCGA § 19-6-15 (f) (4) (B). In that respect it is similar to the preceding subsection, OCGA § 19-6-15 (f) (4) (A),

which authorizes trial courts and juries to "imput[e] gross income based on a 40 hour workweek at minimum wage" when "a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or jury has no other reliable evidence of such parent's income or income potential." The express intent of the legislature is to reserve the arbitrary – and in the case of subsection (B), draconian – calculations authorized by those provisions for exceptional cases where there is no more principled way to establish a parent's income.

This is not such a case. Here there is at least some reliable evidence of income. Jackson presented his own testimony, a Domestic Relations Financial Affidavit, bank records,[1] and tax documents as evidence of his income. And Sanders notes in her brief that she presented records showing Jackson's current payment history from one of his

---

[1] While the majority notes that such bank records are not included in the record before us, the trial transcript shows that Jackson was cross-examined about his business' bank statements and the trial court expressly referenced his "business bank records" in its final order. Sanders also refers to Jackson's business bank records in her appellate brief.

largest clients to show his business earnings at trial.[2] Thus, there was some reliable evidence of Jackson's income introduced at trial. Compare *Brogdon v. Brogdon*, 290 Ga. 618, 620 (3) (723 SE2d 421) (2012) (where evidence showed wife had no regular employment, trial court did not abuse its discretion in finding that it had no reliable evidence of wife's income).

Of course the trial court, as factfinder, properly pointed out inconsistencies and deficiencies in the evidence of Jackson's income. *Mearidy v. State*, 287 Ga. 312, 313 (696 SE2d 61) (2010) ("it was for the factfinder to resolve any conflicts or inconsistencies in the evidence"). But inconsistencies and deficiencies like those the trial court found here are arguably present in almost any case where a parent's income is vigorously litigated – particularly where a parent is a business owner. For example the trial court criticizes Jackson for objecting to discovery from his accountant. But that objection was resolved through the discovery dispute resolution procedure set out in the Civil Practice Act. And there are legitimate reasons a 50% owner of a small business would want to limit disclosure of its financial information. The trial court speculates that Jackson's rental income – which is disclosed in his financial affidavit

---

[2] In her brief, Sanders plainly states that she obtained such records by subpoena and used them "to assist the court in understanding the father's business earnings at trial."

3

– might have exceeded the amount disclosed and criticizes him for not better documenting the disclosure. It is, of course, the province of the factfinder to resolve questions raised by such arguable inconsistencies and deficiencies. But the answers to those questions should go simply to the weight and sufficiency of the evidence supporting or contradicting Jackson's claims. They do not constitute a complete absence of reliable evidence of income which would trigger the severe remedy of OCGA § 19-6-15 (f) (4) (B) – a mandatory finding that a parent's income increased by "at least 10 percent per year." Reading subsection (B) to be applicable on the basis of the inconsistences and deficiencies like those identified here, is not a fair reading.

Moreover, as the majority recognizes, the trial court here further committed legal error under the very statute it purported to apply by failing to impose the minimum 10 percent increase, and instead imposing an arbitrary and unfounded increase of four percent per year.

The trial court did not need OCGA § 19-6-15 (f) (4) (B). Factfinders have wide latitude in fixing the amount of child support, using their experience as enlightened persons in judging the amount necessary for support under the evidence as disclosed by the record and all the facts and circumstances of the case. *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005). Instead of this misapplication of subsection (B)

4

as a basis for determining Jackson's income, the trial court should have simply used the income evidence submitted by the parties to make that determination and then fix the amount of child support based on that finding. See also *Wood v. Wood*, 283 Ga. 8, 9 (1) (b) (655 SE2d 611) (2008) (income level attributed to husband supported by evidence provided to trial court).

Accordingly, unlike the majority, I conclude that the trial court abused its discretion in relying on OCGA § 19-6-15 (f) (4) (B) as a basis for determining Jackson's income, and thus on remand the trial court should not be allowed to recalculate his income under that code section. I therefore would reverse the trial court's ruling and remand for the court to make a finding as to Jackson's income based on the evidence presented at trial.

I am authorized to state that Presiding Judge Barnes and Presiding Judge Phipps join in this opinion concurring in part and dissenting in part.