S11F1975. BROGDON v. BROGDON.

(723 SE2d 421)

NAHMIAS, Justice.

We granted this application for discretionary appeal under Supreme Court Rule 34 (4), by which we grant every "application . . . for leave to appeal a judgment and decree of divorce that is final under OCGA § 5-6-34 (a) (1) and timely under OCGA § 5-6-35 (d) and is determined to have possible merit by a majority vote of the Court." As explained below, the final child support order issued by the trial court includes a specific deviation for extraordinary educational expenses, but the court failed to make the statutorily required written findings necessary to support the deviation. We therefore must reverse the judgment in part and remand the case for a redetermination of the final child support order, with any extraordinary educational expenses deviation to be based on proper written findings. Husband's remaining challenges lack merit, and so we affirm the remainder of the trial court's judgment.

1. Viewed in the light most favorable to the trial court's rulings, the evidence showed as follows. On November 11, 2000, Joshua P. Brogdon (Husband) and Tawnya S. Brogdon (Wife) married. They later had a child. On July 9, 2009, Husband filed for divorce. On August 3, 2010, after a two-day bench trial, the court entered a final judgment and decree of divorce. The divorce decree incorporated by reference an attached Child Support Addendum, which incorporated by reference and attached the statutorily required Child Support Worksheet and Child Support Schedule E — Deviation (Special Circumstances). See OCGA § 19-6-15 (c) (4) ("The child support

worksheet and, if there are any deviations, Schedule E shall be attached to the final court order or judgment . . . .").

The divorce decree awarded the parties joint legal custody of their five-year-old son, with Wife having primary physical custody. Regarding child support, the trial court rejected Husband's claims about his sources of income and monthly gross income of $2,916.67, instead finding that he had monthly gross income of $12,000. The court found no reliable evidence of Wife's income and imputed to her monthly gross income of $1,257. After performing the calculations reflected on the Child Support Worksheet and Schedule E, the court ordered Husband to pay Wife monthly child support of $1,816.

Regarding equitable division, the trial court found that, during the marriage, the parties acquired partial ownership interests in two limited liability real estate holding companies worth $120,000 and $22,500, respectively, and a $50,000 interest in a residential repair partnership. The divorce decree awarded Husband these business interests but ordered him to pay Wife half their value, $96,250, in monthly installments of $2,000. Husband was also required to execute the general security agreement and collateral pledge agreement attached to the decree, along with any other documents necessary to perfect Wife's security interest in the $96,250 award. The court divided other marital property between the parties.

On May 11, 2011, the trial court entered an order granting in part and denying in part Husband's motion for reconsideration and modification of the divorce decree. The court also entered an order requiring Husband to pay to Wife's attorney a total of $20,917.10 in attorney fees and costs in monthly installments of $750. On July 6, 2011, we granted Husband's application for discretionary appeal of the divorce decree and attorney fees order under our Rule 34 (4).

2. Husband contends that the trial court erred in finding that he had monthly gross income of $12,000. However, the evidence showed that Husband frequently made large cash withdrawals, had recently made large purchases, and used his business account to pay a substantial amount of his personal expenses averaging $12,079.05 per month. The evidence also showed that Husband and his girlfriend attempted to fabricate a false profit and loss statement for his sole proprietorship that substantially understated his actual earnings. Thus, there is evidence supporting the trial court's finding that Husband had monthly gross income of $12,000. See *Alejandro v. Alejandro*, 282 Ga. 453, 453 (651 SE2d 62) (2007) ("The trial court's factual findings [in a divorce case] will be upheld if there is any evidence to support them."); *Dyals v. Dyals*, 281 Ga. 894, 895 (644 SE2d 138) (2007) (finding no reversible error where some evidence supports the factfinder's determination of gross income).

3. Husband claims that the trial court erred in finding that Wife

"has no income for purpose of computing child support" and imputing to her monthly gross income of only $1,257. The evidence showed that although Wife was able to work, she had no regular employment, was the primary caretaker of the parties' young son, and occasionally earned $11 per hour for working special events at a restaurant. OCGA § 19-6-15 (f) (4) (A) provides:

> Imputed income. When establishing the amount of child support, if a parent fails to produce reliable evidence of income, such as tax returns for prior years, check stubs, or other information for determining current ability to pay child support or ability to pay child support in prior years, and the court or the jury has no other reliable evidence of the parent's income or income potential, gross income for the current year shall be determined by imputing gross income based on a 40 hour workweek at minimum wage.

The trial court did not abuse its discretion in finding that it had no reliable evidence of Wife's income and imputing to her monthly gross income of $1,257 based on a 40-hour workweek at the national minimum wage of $7.25 per hour.

4. Husband asserts that the trial court improperly attributed 100% of the "basic child support obligation" to him instead of calculating his pro rata share of the obligation as required by OCGA § 19-6-15 (b). This assertion is based on the following passage in the divorce decree: "The basic child support obligation for the support and maintenance of the minor child of the parties is $1,816.00. . . . The Court assigns 100 percent of the child support obligation to [Husband] . . . ." Read in isolation, this language might suggest an error in the court's calculation of the final child support amount for which Husband is responsible. See OCGA § 19-6-15 (b) (5) ("Calculate the pro rata share of the basic child support obligation for the custodial parent and the noncustodial parent by dividing the combined adjusted income into each parent's adjusted income to arrive at each parent's pro rata percentage of the basic child support obligation.").

However, we read the divorce decree as a whole, including the attachments incorporated by reference. The Child Support Worksheet correctly stated that the parties' "basic child support obligation" was $1,517 based on their monthly combined adjusted income of $13,257 and one child. See OCGA § 19-6-15 (o) (listing $1,517 as the basic child support obligation for one child and a monthly combined adjusted income of $13,250). The worksheet then listed $1,816 as the "final child support amount" due from Husband each month after applying the rest of the statutorily required steps for

calculating child support, see OCGA § 19-6-15 (b) (5)-(9), which included calculation of Husband's pro rata share of the basic child support obligation, see OCGA § 19-6-15 (b) (5).

The Child Support Addendum says much the same thing as the main body of the decree without using the term "basic child support obligation": "Child Support Amount — The Father shall pay to the Mother, for the support of the minor children [sic], the sum of 1,816.00 Dollars ($1,816.00) per month, beginning on June 1, 2010." Moreover, the Child Support Addendum and the Child Support Worksheet show that the court did prorate Husband's responsibility for the basic child support obligation before proceeding through the rest of the steps in the statutory calculation to arrive at the order requiring Husband to pay Wife $1,816 monthly for child support.

While "basic child support obligation" is a term of art in the context of the child support guidelines, see OCGA § 19-6-15 (a) (3), we conclude that the trial court simply misused the term in the one passage relied upon by Husband and this mistake did not affect the child support calculations or award. Accordingly, Husband has failed to show reversible error.

5. OCGA § 19-6-15 (*i*) (2) lists 11 situations that arise with some frequency in child support cases and that may, in a particular case, warrant a "specific deviation" from the presumptive amount of child support calculated under the statutory guidelines. Husband argues that the trial court erred by including specific deviations for low income and extraordinary educational expenses without the statutorily required written findings and by not including a specific deviation for his payment of all extracurricular expenses for the parties' son.

(a) *Specific deviation for low income*. The divorce decree is clear that Husband was ordered to pay Wife $1,816 monthly for child support, but it contains some errant statements. For example, the decree states that the court "finds no deviation on the child support schedule," but the incorporated Child Support Addendum states, "It has been determined that one or more of the Deviations allowed under OCGA § 19-6-15 applies in this case, as shown by the attached *Schedule E*." In addition, the Child Support Worksheet shows a specific deviation of $452.60 for each parent (downward for Wife; upward for Husband), and by "Deviation type(s) used," it says, "Extraordinary Educational Expenses." Husband contends that the final child support order (here, the divorce decree and attachments) also reflects a specific deviation based on Wife's low income. This argument is both legally and factually unsound.

The specific deviation for "Low Income" authorized by OCGA § 19-6-15 (*i*) (2) (B) is based on the *noncustodial* parent's inability to pay the presumptive child support amount due to low income. See,

e.g., OCGA § 19-6-15 (*i*) (2) (B) (i) ("If the noncustodial parent requests a low-income deviation . . ."), (ii) ("In considering a noncustodial parent's request for a low-income deviation . . ."). There is no provision for a specific deviation based on the low income of a *custodial* parent like Wife. See generally OCGA § 19-6-15 (*i*) (2) (B) (i)-(vii). Moreover, Schedule E contains a section addressing the specific deviation for low income, and it was left blank, indicating that the trial court found this specific deviation inapplicable. Because there was no deviation for low income, written findings regarding that issue were not required. See *Rumley-Miawama v. Miawama*, 284 Ga. 811, 812 (671 SE2d 827) (2009) (noting that findings are required only when applying a specific deviation, not when denying a deviation).

(b) *Specific deviation for extraordinary educational expenses.* The guidelines statute discusses a specific deviation for three categories of "Extraordinary Expenses" — extraordinary educational expenses, special expenses incurred for child rearing, and extraordinary medical expenses. See OCGA § 19-6-15 (*i*) (2) (J) (i)-(iii).[1] The Child Support Worksheet and Schedule E (and the final amount in the divorce decree) reflect a specific deviation of $452.60 for the child's extraordinary educational expenses. Husband argues that the trial court committed reversible error by failing to make the written findings necessary to support this deviation. We agree.

OCGA § 19-6-15 (*i*) (1) (A) states that "[t]he amount of child support established by this Code section and the presumptive amount of child support are rebuttable" and authorizes a court to "deviate from the presumptive amount of child support *in compliance with this subsection.*" (Emphasis added.) If the court finds that a deviation is applicable, *"the court . . . shall make written findings . . .* that an amount of child support other than the amount calculated is reasonably necessary to provide for the needs of the child." OCGA § 19-6-15 (*i*) (1) (B) (emphasis added). Accord OCGA § 19-6-15 (c) (2) (E) ("In the final judgment or decree in a divorce case in which there are minor children, . . . the court shall . . . [i]nclude written findings

---

[1] OCGA § 19-6-15 (*i*) (2) (J) explains the purpose and mechanics of the specific deviation for "Extraordinary Expenses":

The child support obligation table includes average child rearing expenditures for families given the parents' combined adjusted income and number of children. Extraordinary expenses are in excess of average amounts estimated in the child support obligation table and are highly variable among families. Extraordinary expenses shall be considered on a case-by-case basis in the calculation of support and may form the basis for deviation from the presumptive amount of child support so that the actual amount of the expense is considered in the calculation of the final child support order for only those families actually incurring the expense. Extraordinary expenses shall be prorated between the parents by assigning or deducting credit for actual payments for extraordinary expenses.

of fact as to whether one or more of the deviations allowed under this Code section are applicable . . . .").

In addition, the trial court's final judgment must state:

(i) The reasons for the deviation from the presumptive amount of child support;

(ii) The amount of child support that would have been required under this Code section if the presumptive amount of child support had not been rebutted; and

(iii) How, in its determination:

(I) Application of the presumptive amount of child support would be unjust or inappropriate; and

(II) The best interest of the child for whom support is being determined will be served by deviation from the presumptive amount of child support.

OCGA § 19-6-15 (*i*) (1) (B) (i)-(iii) (II). Earlier in the guidelines statute, subsection (c) recites this list of required findings with slightly different wording. Subsection (c) does not include subsection (*i*)'s requirement of a finding "that an amount of child support other than the amount calculated is reasonably necessary to provide for the needs of the child," but it adds another point, stating that the court's finding that application of the presumptive amount of child support would be unjust or inappropriate must be made "considering the relative ability of each parent to provide support." OCGA § 19-6-15 (c) (2) (E) (iii).

Since the revised child support guidelines took effect in July 2008, this Court has repeatedly emphasized the statute's clear directive that these written findings must be included in the final child support order if a deviation is made. We have described the written findings as "mandatory" and held that, when any of the required findings are omitted, we have no choice but to "reverse the trial court's judgment and remand th[e] case to the trial court for further proceedings." *Holloway v. Holloway*, 288 Ga. 147, 149 (702 SE2d 132) (2010). Accord *Stowell v. Huguenard*, 288 Ga. 628, 632 (706 SE2d 419) (2011) ("If a trial court believes that such a provision [changing the presumptive amount] is necessary to arrive at a fair child support amount, then it must treat it as a deviation, enter it on the Child Support Schedule E — Deviations section of the child support worksheet, and support it with 'the required findings of fact and application of the best interest of the child standard.' OCGA § 19-6-15 (b) (8)."); *Turner v. Turner*, 285 Ga. 866, 867 (684 SE2d 596) (2009) ("Because the court in this case applied a discretionary

parenting time deviation from the presumptive amount of child support but failed to make all of the findings required under OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B), we reverse the trial court's final judgment and remand this case to the trial court for further proceedings consistent with this opinion.").

We have reversed child support orders even when we presumed that the evidence supported the trial court's actions because there was no transcript of the proceedings, see *Spurlock v. Dept. of Human Resources*, 286 Ga. 512, 515 (690 SE2d 378) (2010) (" 'Even presuming the evidence supported the trial court's actions, we must first have the required findings of fact for review so that we know that the court considered the correct factors in exercising its discretion.' "), and even when the amount of the deviation could be characterized as de minimis, see *Holloway*, 288 Ga. at 148-149 (reversing and remanding where the final child support order required payments of only $18 less than the presumptive amount of $1,018, because the trial court did not include the written findings necessary to support the deviation).

Here, the Child Support Addendum contained written findings that "one or more of the Deviations allowed under OCGA § 19-6-15 applies in this case" and that "[t]he Presumptive Amount of Child Support that would have been required under OCGA § 19-6-15 if the deviations [sic] had not been applied is $1,363.71 per month," thereby satisfying OCGA § 19-6-15 (c) (2) (E) (ii) and (i) (1) (B) (ii). However, there is no written finding that "an amount of child support other than the amount calculated is reasonably necessary to provide for the needs of the child." OCGA § 19-6-15 (i) (1) (B).

In addition, the Child Support Addendum says that the attached Schedule E "explains the reasons for the deviation," as well as "how the application of the guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support" and "how the best interest of the children who are subject to this child support determination is served by deviation from the presumptive amount of child support." Such explanations would satisfy OCGA § 19-6-15 (c) (2) (E) (i) and (iii) and (i) (1) (B) (i) and (iii) (I), (II). However, the trial court left the spaces provided for this information on Schedule E blank, even though the caption above those spaces plainly states: "Important Requirement About Deviations — No Deviations are permitted under the law unless all three questions below . . . have been answered."

Contrary to the claim made by Wife's counsel at oral argument, the missing findings also do not appear in the trial court's order on Husband's motion for reconsideration and modification of the divorce decree. In that order, the court explained the evidentiary basis for including $500 per month as the cost for private schooling and said that "the Court did receive evidence as to private school tuition

and does find it as an appropriate inclusion in the Child Support Addendum." But the order does not include the other findings required by OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B).

Accordingly, the child support order does not comply with the statute and does not provide the findings needed to ensure that the application of the extraordinary educational expenses deviation was appropriate. "[A] lack of mandatory written findings overcomes the presumption of regularity," and "[e]ven presuming the evidence supported the trial court's actions, we must first have the required findings of fact for review so that we know that the court considered the correct factors in exercising its discretion." *Spurlock*, 286 Ga. at 515 (citations and punctuation omitted). We therefore must reverse the final judgment in part and remand for proceedings consistent with this opinion.

(c) *No specific deviation for extracurricular expenses*. The Child Support Addendum states, "The Father shall pay 100% of extracurricular expenses as he has the final decision making authority in extracurricular activities for the minor child." Husband claims that this directive entitled him to a specific deviation for "Extraordinary Expenses" under the category of "special expenses incurred for child raising." OCGA § 19-6-15 (i) (2) (J) (ii). The statute explains the purpose and mechanics of this type of deviation as follows:

> Special expenses incurred for child rearing, including, but not limited to, quantifiable expense variations related to the food, clothing, and hygiene costs of children at different age levels, may be a basis for a deviation from the presumptive amount of child support. Such expenses include, but are not limited to, summer camp; music or art lessons; travel; school sponsored extracurricular activities, such as band, clubs, and athletics; and other activities intended to enhance the athletic, social, or cultural development of a child but not otherwise required to be used in calculating the presumptive amount of child support as are health insurance premiums and work related child care costs. A portion of the basic child support obligation is intended to cover average amounts of special expenses incurred in the rearing of a child. In order to determine if a deviation for special expenses is warranted, the court or the jury shall consider the full amount of the special expenses as described in this division; and when these special expenses exceed 7 percent of the basic child support obligation, then the additional amount of special expenses shall be considered as a deviation to cover the full amount of the special expenses.

Id.

Husband claims the trial court erred in ordering him to pay for the child's extracurricular expenses on top of the base amount provided in the basic child support obligation without including a corresponding specific deviation in the calculation of the final child support order. See *Turner*, 285 Ga. at 867-868 (reversing portion of divorce decree that required a husband to pay two-thirds of the children's extracurricular activities expenses as a deviation not supported by the required written findings). However, when this issue came up at trial, Husband's counsel, after noting that a deviation might be required, told the court, "Since Mr. Brogdon is going to have the primary decision making authority as to extracurricular activities, he'll pay for those. We'll just agree to pay for those, since he's responsible." In its order denying modification of this portion of the divorce decree, the trial court noted, "At the trial of the case, the Plaintiff stipulated that he would be responsible for and pay the child's extracurricular activity cost."

Having urged the trial court to enter this component of the divorce decree, Husband will not be heard to complain about it on appeal, see *Finklea v. Finklea*, 290 Ga. 357, 358-359 (720 SE2d 624) (2012), at least where, as here, Husband's request *increased* the overall support available to the child. Compare *Holloway*, 288 Ga. at 149 (reversing a voluntary *decrease* in the amount of child support to be paid to the custodial parent without any finding by the court that the decrease was in the best interest of the children, explaining that "[t]he child support guidelines were made mandatory to ensure that the best interests of the children were protected, and a self-interested agreement made by a parent cannot override this purpose."). In any event, Husband was not entitled to the mandatory specific deviation for special expenses incurred for child rearing because he did not offer evidence of any costs of the child's extracurricular activities, much less show that "the full amount of the special expenses as described in this division . . . exceed[s] 7 percent of the basic child support obligation." OCGA § 19-6-15 (*i*) (2) (J) (ii).

6. Husband contends that the trial court erred in ordering him to enter into a general security agreement and a collateral pledge agreement to guarantee the payments required by the divorce decree. Husband was awarded the marital estate's interests in two limited liability companies and a residential real estate partnership and ordered to pay Wife half their value — $96,250 — in monthly installments of $2,000. Requiring Husband to execute the agreements was a practical and reasonable way for the court to ensure that Wife would receive her interest in the marital estate as ordered, and Husband cites no authority showing that such a requirement is improper. In addition, the trial court had reason to question Husband's willingness to make the ordered payments given its finding

that he grossly underrepresented his monthly income to the court and even fabricated a misleading profit and loss statement. Accordingly, we hold that the trial court did not abuse its discretion by requiring Husband to execute the agreements.

7. Husband claims that the trial court erred in awarding attorney fees to Wife under OCGA § 19-6-2 (a) without considering the respective financial position of the parties. However, absent some indication to the contrary, we presume that the court followed the directive of OCGA § 19-6-2 (a) (1) to "consider the financial circumstances of both parties as a part of its determination of the amount of attorney's fees, if any, to be allowed against either party." Moreover, this claim is premised on Husband's argument, which we rejected in Division 2 above, that the court erred in finding that he had gross monthly income of $12,000.

8. In his final enumeration, Husband contends that the trial court abused its discretion by failing to consider his inability to make the monthly installment payments of $2,000 toward the equitable division award. Again, this argument is premised on Husband's argument, rejected in Division 2, that the court erred in finding that his monthly gross income was $12,000. In any event, the divorce decree awarded Husband his sole proprietorship, stock shares, retirement accounts, two vehicles, and partial ownership interests in two limited liability companies and a residential repair partnership. "[U]nder Georgia law, a party can be required to sell or encumber property in order to pay equitable division . . . . [Husband] can sell or encumber his property, or take any other action he deems necessary, to comply with the trial court's order." *Wier v. Wier*, 287 Ga. 443, 444 (696 SE2d 658) (2010).

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED FEBRUARY 27, 2012.

*Henrickson & Sereebutra, Suzanne E. Henrickson, Robert S. Lane*, for appellant.

*Dupree & Kimbrough, Hylton B. Dupree, Jr., Blake R. Carl*, for appellee.