**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 2, 2022**

# In the Court of Appeals of Georgia

A21A1552, A21A1553. WILLIAMS v. WILLIAMS (two cases).

MARKLE, Judge.

Following a bench trial, the trial court entered a divorce decree, and awarded child support and alimony to Stephanie Williams ("the Wife"), as well as attorney fees, pursuant to OCGA § 9-15-14 (b). We granted Jason Williams's ("the Husband") applications for discretionary appeal and these appeals followed. In Case No. A21A1552, the Husband argues the trial court abused its discretion in awarding attorney fees. In Case No. A21A1553, he argues that the trial court abused its discretion by (1) deviating from the statutory child support guidelines without making the requisite findings or attaching the child support worksheets to the final decree; (2) awarding an excessive amount of alimony; and (3) awarding credit card travel

points to the Wife without first classifying them as separate or marital property.[1] As set forth below, in Case No. A21A1553, we reverse the child support award, but affirm the trial court's order as to alimony and the equitable division of the travel points. In Case No. A21A1552, we vacate the attorney fee award.

> In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. The standard by which findings of fact are reviewed is the "any evidence" rule, under which a finding by the trial court supported by any evidence must be upheld.

*Lockhart v. Lockhart*, 361 Ga. App. 499 (863 SE2d 174) (2021).

So viewed, the record shows that, prior to their divorce in December 2020, the Wife and Husband had been married for 17 years and had 4 children together. The Wife was a stay-at-home mom for the greater portion of the marriage. At the time of the divorce, the Husband was employed as a corporate director, earning a base yearly salary of $200,000 and an annual bonus in excess of $2,000,000.

---

[1] During the pendency of this appeal, the Husband abandoned as moot his argument regarding the trial court's alleged delegation of its authority to determine visitation rights to the children's therapist.

2

Following a bench trial, the trial court entered a final order and parenting plan awarding the Wife primary physical custody of the four minor children, and joint legal custody. The trial court also ordered the Husband to pay the Wife $3,825 in monthly child support; $4,000 in monthly alimony; and an additional lump sum alimony award of 10 percent of his annual bonus. As additional child support, the Husband was ordered to pay for the children's private school tuition; an outstanding charitable pledge to the school for 2020; annual contributions to the children's college savings accounts; 80 percent of their extracurricular activities; and their medical insurance, as well as 80 percent of any uncovered medical expenses. Although the trial court expressed an intention to attach a child support worksheet to its final order to support the deviations, no such worksheet or any corresponding schedules appear in the record. Additionally, the trial court awarded the Wife 50 percent of the Husband's 2020 bonus and all of the parties' accrued credit card travel points. Finally, the trial court awarded the Wife $129,520 in attorney fees, pursuant to OCGA § 9-15-14 (b). The Husband filed applications for discretionary review, which this Court granted, giving rise to these appeals.

1. *Child support.*

(a) As a threshold matter, the Husband contends that the trial court abused its discretion by entering a child support award that deviated from the statutory guidelines without making the necessary findings of fact or attaching the child support worksheets to the final order. We agree.

> Georgia's child support guidelines are set out in OCGA § 19-6-15 and provide a detailed scheme for determining the amount of child support to be awarded by the court, and compliance with the statute's terms is mandatory. The guidelines establish a presumptive amount of child support calculated principally in proportion to the adjusted gross income of each parent.

(Citations and punctuation omitted.) *Park-Poaps v. Poaps*, 351 Ga. App. 856, 866 (6) (833 SE2d 554) (2019).

Under OCGA § 19-6-15 (i) (1) (B), when a trial court orders a deviation from the presumptive amount of child support, it must make

> certain specific findings of fact . . . in the child support order, including the reasons for the deviation, the amount of child support that would have been required if no deviation had been applied, how the application of the presumptive amount of child support would be unjust or inappropriate considering the relative ability of each parent to provide

4

support, and how the best interest of the child who is the subject of the child support determination is served by a deviation from the presumptive amount.

*Spruell v. Spruell*, 356 Ga. App. 722, 727 (3) (848 SE2d 896) (2020). If the trial court fails to make all of the required findings, we must reverse the child support award, and remand the case to the trial court to make the necessary findings. *Fladger v. Fladger*, 296 Ga. 145, 149 (2) (765 SE2d 354) (2014); *Brogdon v. Brogdon*, 290 Ga. 618, 623 (5) (b) (723 SE2d 421) (2012) (noting that it is well-settled that the written findings required under OCGA § 19-6-15 (i) (1) (B) are "mandatory") (citations omitted). Additionally, under OCGA § 19-6-15 (m) (1), the trial court is required to attach the child support worksheets and corresponding schedules to the final judgment.

Here, in addition to the presumptive amount of child support, the trial court directed the Husband to pay for (1) the children's yearly school tuition; (2) an outstanding charitable pledge to the school; (3) annual payment to the children's college savings plans; (4) 80 percent of the children's extracurricular activities; and (5) 80 percent of all the children's medical expenses not covered by his health insurance. However, the trial court did not attach the worksheets or any schedules it

used to calculate child support to its final order,[2] as required by OCGA § 19-6-15 (m) (1).[3] See also OCGA § 19-6-15 (b) (8) (requiring the completion of schedule E when the final judgment deviates from the presumptive amount of child support). Furthermore, it made *no* findings in accordance with OCGA § 19-6-15 (i) (1) (B) regarding the deviations for extracurricular activities or for the medical insurance and expenses.

With regard to the deviations for tuition, the charitable pledge, and the college savings plans, the trial court expressly found "these amounts to be appropriate as they reflect the disparity of income between the parties, are consistent with the intent expressed by both parties during their divorce trial and Husband can afford the same,

[2] The Husband's proposed child support worksheet and schedule E are included in the record; however, there is nothing in the final judgment to indicate the trial court adopted them. Moreover, the total child support award in the final judgment departs significantly from that proposed by the Husband.

[3] In *Daniel v. Daniel*, 358 Ga. App. 880, 885 (1) (a), n. 5 (358 Ga. App. 880) (2021), we noted that this statutory requirement is "not so strict" as to require reversal in all cases of noncompliance. However, *Daniel* is distinguishable because, there, the trial court did not deviate from the presumptive amount of child support and the worksheet was otherwise included in the appellate record. Id.; see also *Crook v. Crook*, 293 Ga. 867, 870 (2) (750 SE2d 334, 337) (2013) (final order reversed where "the superior court awarded a discretionary downward deviation in the amount of child support, but failed to comply with the appropriate statutory requirements," including OCGA § 19-6-15 (m) (1)).

given his high income." But this finding fails to satisfy the statutory requirements. Most notably, it makes no mention of whether these deviations from the presumptive amount of child support serve the best interest of the children. OCGA § 19-6-15 (i) (1) (B) (iii) (II). "[E]ven presuming the evidence supported the trial court's actions, we must first have the required findings of fact for review so that we know that the court considered the correct factors in exercising its discretion." (Citation and punctuation omitted.) *Brogdon*, 290 Ga. at 625 (5) (b).

For all these reasons, the child support award does not comply with the statute.[4] See *Fladger*, 296 Ga. at 149 (2); *Brogdon*, 290 Ga. at 623 (5) (b); compare *Johnson v. Johnson*, 358 Ga. App. 638, 641 (2) (856 SE2d 17) (2021) (trial court did not err in deviating from the presumptive amount of child support where the findings in an amended divorce degree addressed "the presumptive amount of child support, why the presumptive amount of child support would be inappropriate, the reasons for deviating due to private school and extracurricular activities, and why the deviations

---

[4] We are unpersuaded by the Wife's contention that the Husband waived compliance with these statutory requirements by representing in his opening statement at trial that he agreed to pay the children's private school tuition and health insurance premiums. This argument is belied by the record. Here, the Husband never expressed an intent to waive the required findings under OCGA § 19-6-15 (i) (1) (B). And, by submitting a proposed child support worksheet and schedule E, he signaled an expectation that such would be entered with the final judgment.

7

were in the best interest of the children.") Accordingly, we reverse the final judgment in part, as to the child support ruling, and remand the case for further proceedings consistent with this opinion. In doing so, we note that the Wife concedes that the trial court must also modify the income deduction order as a result of our ruling.

(b) In light of this threshold ruling, we do not address the Husband's specific claims of error with regard to the deviations for educational, medical, and extracurricular activities. See *Brogdon*, 290 Ga. at 625 (5) (b). However, the Husband also contends that the trial court erred by including his employer-paid health insurance benefits in its calculation of his monthly gross income. We address this issue because the trial court made this general finding independent of the child support award.

The Husband is correct that, for child support purposes, employer-paid health insurance premiums are not included in the determination of a parties' gross income. OCGA § 19-6-15 (f) (1) (C); *Hendry v. Hendry*, 292 Ga. 1, 2 (1) (734 SE2d 46) (2012). Accordingly, the trial court is instructed to correct this error on remand.

However, we are not persuaded by the Husband's contention that this miscalculation affects the trial court's award of alimony.[5] First, the Husband points to no authority that this fringe benefit cannot be considered for purposes of alimony. See OCGA § 19-6-5 (a) (4) (award of alimony is determined based on a number of factors, including "the financial resources of each party"). Second, in its finding regarding the Husband's income, the trial court expressly considered the Husband's large annual bonus, which *does* bear on the alimony award and eclipses the miscalculation complained of here. See id. To the extent that the Husband relies on *Lutz v. Lutz*, 302 Ga. 500 (807 SE2d 336) (2017), that case is distinguishable in that it involved a substantial miscalculation of the husband's gross income due to the trial court's incorrect conclusion that his annual bonus was in addition to, rather than included in, his annual salary. 302 Ga. at 502-503 (2) ("[A] $100,000 discrepancy is too large to ignore."). Whereas, here, the trial court made a mere overvaluation of the Husband's *base* salary for child support purposes with regard to a fringe benefit under OCGA § 19-6-15 (f) (1) (C). As such, the Husband cannot show that the trial court's error in this regard requires the reversal of the alimony award.

---

[5] To the extent the Husband contends this error affects any award of attorney fees pursuant to OCGA § 19-6-2, that argument is misplaced. The trial court awarded the Wife's attorney fees pursuant to OCGA § 9-15-14 (b).

2. *Alimony*.

The Husband next argues that the trial court abused its discretion by entering an excessive and punitive alimony award. We disagree.

> Alimony is defined in OCGA § 19-6-1 (a) as "an allowance out of one party's estate, made for the support of the other party when living separately." Subsection (c) goes on to provide that "alimony is authorized, but not required, to be awarded to either party in accordance with the needs of the party and the ability of the other party to pay." In addition, OCGA § 19-6-5 (a) sets out factors to be considered in determining the appropriate amount of alimony to be awarded, including the parties' standard of living, the duration of the marriage, the age and condition of the parties, their financial resources, the time and training necessary for either party to acquire employment skills, and the contributions of each party to the marriage.

(Citations and punctuation omitted.) *Hammond v. Hammond*, 290 Ga. 518, 519-520 (1) (722 SE2d 729) (2012); see also *Pryce v. Pryce*, 359 Ga. App. 590, 594 (5) (859 SE2d 554) (2021).

Here, the trial court found that the parties had been married for 17 years; the Wife had been a stay-at-home mom since the birth of their first child in 2005; and that their youngest child was born in 2012. The trial court further found that, in addition to the Husband's base salary, he received an annual bonus that was in excess of

10

$2,000,000 in 2019, was expected to be even larger in 2020, and was to be received annually as long as he maintained his present employment. The trial court also found the Wife had a 33 percent interest in her family's company and a potential interest in several parcels of real property owned by her family.

The trial court awarded the Wife monthly alimony in the amount of $4,000 for 10 years or until the youngest child was no longer eligible to receive child support, whichever occurs first. In addition, the Wife received a lump sum award of 10 percent of the net amount of the Husband's annual bonus for 10 years. In making the alimony award, the trial court specifically considered the Wife's needs and the Husband's income and ability to pay.

With regard to the monthly award, the Husband's argument on appeal is specious because this amount is precisely what he proposed to pay in his opening statement before the trial court. "[I]t is well established that one cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing." (Citation and punctuation omitted.) *Saravia v. Mendoza*, 303 Ga. App. 758, 762 (1) (695 SE2d 47) (2010); see also *Hammond*, 290 Ga. at 519 (1) ("[A] party will not be heard to complain of error induced by their own conduct, nor of error expressly invited during the course of trial."). Furthermore, although the Husband contends that

11

the trial court incorrectly valued the Wife's potential interest in her family's company or real estate holdings to determine her needs, he points to no evidence to show that she was presently receiving income from these assets.

As to the yearly percentage of the annual bonus, the trial court had wide latitude to calculate the alimony award, and, in light of its considerations set forth above, we cannot say it abused its discretion. See *Pryce*, 359 Ga. App. at 595 (5) (alimony award was not in error where trial court considered length of marriage, wife's tenure as a stay-at-home mom, and parties' disparate incomes); see also *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005) ("In the absence of any mathematical formula, fact-finders are given a wide latitude in fixing the amount of alimony . . . , and to this end they are to use their experience as enlightened persons in judging the amount necessary for support under the evidence as disclosed by the record and all the facts and circumstances of the case.") (citation and punctuation omitted). Moreover, nothing in the final judgment suggests that the alimony award was intended to punish the Husband for any marital misconduct, as he contends. See *Wier v. Wier*, 287 Ga. 443, 444 (4) (696 SE2d 658) (2010).

Finally, the Husband takes issue with the trial court's award to the Wife of half of the net of his 2020 bonus. However, it is clear from our review of the final

12

judgment that the trial court fixed this award as an equitable division of marital property, not as alimony. See *Pryce*, 359 Ga. App. at 595 (7) ("Equitable property division is distinctly different from alimony. . . . Equitable division of property . . . is an allocation of assets acquired during the marriage to the parties, based on their respective equitable interests in those assets.")

(citation omitted). The Husband makes no argument to show that the trial court abused its discretion in its equitable distribution of his 2020 bonus. See id. Accordingly, the trial court did not err in its calculation of the alimony award.

3. *Travel points*.

The Husband next argues that the trial court abused its discretion by failing to classify the credit card travel points as either separate or marital property. We disagree.

The Husband is correct that, when dividing marital property on an equitable basis, the trial court must first classify the property as either marital or non-marital. *Flory v. Flory*, 298 Ga. 525, 526 (783 SE2d 122) (2016); *Thomas v. Thomas*, 259 Ga. 73, 75 (377 SE2d 666) (1989). Here, in awarding all of the travel points to the Wife,

the trial court did not expressly state that they were marital property subject to equitable division.[6] This omission, however, is not fatal to the judgment.

The trial court was not required to make findings of fact unless specifically requested by the parties prior to the judgment, which did not occur here. *Crowder v. Crowder*, 281 Ga. 656, 658 (642 SE2d 97) (2007); OCGA § 9-11-52 (a). "Inasmuch as the issues on appeal depend upon the factual determinations made by the trial court as fact-finder and neither party asked the trial court to make factual findings, we are unable to conclude that the trial court's equitable distribution of marital property was improper as a matter of law or as a matter of fact." Id. at 658-659; compare *Flory*, 298 Ga. at 526-527 (trial court erred in its classification of assets as separate property where it *made findings* based on principles of equity rather than based on the assets' source and character). Accordingly, we affirm the trial court's distribution of the travel points to the Wife.

---

[6] Nevertheless, it appears that the trial court viewed the points as marital property as it references "the remaining travel points earned by *both* Husband and Wife."

4. *Attorney fees*.

The Husband next contends that the trial court abused its discretion by awarding the Wife's attorney fees pursuant to OCGA § 9-15-14 (b) without limiting the award to the allegedly sanctionable conduct. He further argues the judgment is unsupported by the evidence of record, and he was not afforded an opportunity to cross-examine the Wife's former counsel or her experts. We agree.

"As a general rule, an award of attorney fees and expenses of litigation are not available to the prevailing party unless authorized by statute or contract." (Citation and punctuation omitted.) *Moore v. Hullander*, 345 Ga. App. 568, 570 (2) (814 SE2d 423) (2018). However,

> OCGA § 9-15-14 (b) authorizes a trial court to award reasonable attorney fees upon a finding that an action or any part thereof ''lacked substantial justification'' or that the action was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct. As used in this Code section, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious. An award under this section must be supported by sufficient proof of the actual costs and the reasonableness of those costs. To permit meaningful appellate review of an award of fees and expenses, the trial court's order

15

cannot be too vague and conclusory, such as where it fails to cite examples of conduct that authorize the award. The trial court need not cite specific testimony, argument of counsel, or any other specific factual reference in its order awarding fees under OCGA § 9-15-14; it is only required to specify the conduct upon which the award is made. Thus, when awarding attorney fees under OCGA § 9-15-14 (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. As we have explained, lump sum or unapportioned attorney fees awards are not permitted in Georgia, and we will vacate and remand for further factfinding where the trial court's order, on its face, fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why the court awarded one amount of fees rather than another under OCGA § 9-15-14 (b).

*Spirnak v. Meadows*, 355 Ga. App. 857, 872-873 (7) (d) (844 SE2d 482) (2020). We review an award under OCGA § 9-15-14 (b) for an abuse of discretion. *Cohen v. Rogers*, 341 Ga. App. 146, 148 (2) (798 SE2d 701) (2017).

(a) Here, the Wife sought recoupment of her attorney fees in excess of $130,000, pursuant to OCGA § 9-15-14.[7] After a hearing, the trial court granted the

---

[7] On appeal, the Wife asserts that she argued for fees under both OCGA § § 9-15-14 and 19-6-2 at the hearing, despite only bringing a claim under OCGA § 9-15-14 in her pre-hearing letter brief to the trial court; regardless, the trial court entered the award under OCGA § 9-15-14 (b) alone.

16

Wife the full amount of her claim for attorney fees based on its finding that the Husband had lied about an extramarital affair at the outset of the case, and was evasive about his cohabitation with another woman following the parties' separation, and that this conduct unnecessarily expanded the proceedings.[8]

The record shows that the Wife filed for divorce in January 2018 and, two months later, the Husband invoked the Fifth Amendment in response to her interrogatories regarding his extramarital affairs. At his deposition in February 2020, however, the Husband waived the privilege and admitted his extramarital affairs. He also testified to the affairs and to his living arrangements at the bench trial.

Pretermitting whether the Husband's conduct during the pendency of the litigation was sanctionable,[9] the trial court failed to limit its award of fees to the

[8] In the divorce decree, the trial court indicated that it was inclined to award attorney fees to the Wife based on the disparity in the parties' incomes and because the Husband's marital misconduct caused the divorce. However, in its subsequent order regarding the fees, the trial court based its award, pursuant to OCGA § 9-15-14 (b), on the Husband's conduct during the course of the litigation.

The trial court awarded $129,520.44 in fees and costs, reducing the requested amount only slightly after a duplicate charge was identified at the hearing.

[9] Our review of the record reveals that the Wife did not file an objection to the Husband's assertion of his Fifth Amendment privilege, nor did the Court make an express finding as to whether its invocation was improper. See *Jett v. State*, 230 Ga. App. 655, 656 (2) (498 SE2d 274) (1998) ("[T]here is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings. The privilege must

17

prohibited conduct. Rather, the trial court awarded the entire amount of fees incurred during the course of the litigation "without showing the complex decision making process necessarily involved in reaching that particular dollar figure," nor describing "how the award was apportioned to include only fees and expenses generated based on [the Husband's] sanctionable conduct under OCGA § 9-15-14 (b)." *Moore*, 345 Ga. App. at 573-574 (2) (c); see also *Spirnak*, 355 Ga. App. at 873 (7) (d) ("[L]ump sum awards such as this are not permitted under OCGA § 9-15-14."). Accordingly, we vacate the attorney fee award and remand the case to the trial court for additional factual findings. *Reid v. Reid*, 348 Ga. App. 550, 555 (2) (823 SE2d 860) (2019) (Where the trial court's order does not apportion the fee award to the sanctionable conduct, "the proper course is to vacate the fee award and remand for further proceedings.").

(b) The Husband next argues that the award was not supported by competent evidence, and he was not provided a meaningful opportunity to cross-examine the

---

be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim.") (citation and punctuation omitted). Because this is a Court for the correction of errors, "in the absence of a ruling by the trial court, this Court has nothing to review." *Hart v. Groves*, 311 Ga. App. 587, 588 (1) (716 SE2d 631) (2011).

Wife's former counsel and experts. Because these issues may arise on rehearing, we address them, and we agree.

It is well-settled that "an award of attorney fees and costs under Georgia law can only be authorized if there is sufficient proof of the *actual* costs and the reasonableness of those costs." (Emphasis supplied.) *Reynolds v. Clark*, 322 Ga. App. 788, 790 (1) (746 SE2d 266) (2013).

Here, the total fees sought by the Wife included those incurred in her representation by two prior counsel. The billing statements from prior counsel, which she merely attached to her brief below, amounted to over $45,000 in fees and costs. Notably, the billing statement from one of the prior firms does not identify the work that was performed. At trial, the Wife called only her current counsel to testify to the necessity and reasonableness of the fees incurred since she entered the case in January 2020. This evidence was insufficient to support the total amount of fees sought. See *Landry v. Walsh*, 342 Ga. App. 283, 287 (2), n. 3 (801 SE2d 553) (2017) ("simply identifying the total attorney fees incurred in an action falls far short of the evidence required to support an OCGA § 9-15-14 fee award."); *Bell v. Waffle House*, 331 Ga. App. 443, 444 (771 SE2d 132) (2015) ("Each attorney for whose services compensation is sought must provide admissible evidence of fees in the form of

personal testimony, or through the testimony of the custodian of the applicable billing records, as an exception to the hearsay exclusion.") (citation and punctuation omitted); compare *Cohen*, 341 Ga. App. at 152-153 (2) (b) (movant's "counsel established his *personal* knowledge of the fee entries and the legal work done on [his client's] behalf") (emphasis supplied).

Additionally, the evidence of record does not support the trial court's award of the expenses of litigation. Here, the Wife sought to recoup her costs for hiring a private investigator, a forensic accounting firm, and a child therapist. Most notably, the Wife submitted a billing statement from her private investigator, in excess of $10,000, that contains entries for work done prior to the filing of the complaint. See *Regan v. Edwards*, 334 Ga. App. 65, 66 (778 SE2d 233) (2015) ("This Court has explained that attorney fee awards pursuant to OCGA § 9-15-14 (b) may not be based on conduct that occurred prior to litigation."). The Wife also submitted a bill, in excess of $17,000, from a forensic accounting firm, that appears to have been hired prior to her current counsel's entry in the case, and no representative of that firm was called to testify at the trial. Moreover, there is nothing in the record to establish the reasonableness of the expert's fees. Cf. *Campbell v. Beak*, 256 Ga. App. 493, 498 (5) (568 SE2d 801) (2002) ("[A]n attorney may testify as to the reasonableness of *his*

*own* fee.") (citation and punctuation omitted; emphasis supplied). Although the Wife argues that the Husband was able to question the private investigator and the therapist about their fees at trial, her § 9-15-14 claim was not yet pending. As such, the Husband was not on notice that he would be taxed with their fees. See *Williams v. Cooper*, 280 Ga. 145, 147 (1) (625 SE2d 754) (2006) ("[W]ithout proper notice that an award of attorney fees under OCGA § 9-15-14 (b) is under consideration, the party against whom fees are assessed has not been given an opportunity to challenge the basis on which the fees are assessed."). Accordingly, we vacate the fee award and remand the case for further findings consistent with this opinion.

*Judgment vacated, and case remanded with direction in Case No. A21A1552. Judgment affirmed in part, reversed in part, and case remanded with direction in Case No. A21A1553. Barnes, P. J., and Gobeil, J., concur.*